E. L. KETCHIE ET ALS. v. J. W. HEDRICK AND COMMISSIONERS OF HIGH POINT.

(Filed 7 November, 1923.)

Constitutional Law — Taxation — Municipal Corporations — Cities and Towns—Chamber of Commerce.

Article VII, section 7, of our State Constitution, restricting the power of the Legislature from allowing counties, cities and towns to contract a debt, pledge its faith or loan its credit, or to levy or collect any tax except for the necessary expense thereof, is with reference to the county, city or town as a State governmental agency, and does not authorize an appropriation of a certain per cent of taxes levied upon their taxpayers for the use or disposition of a chamber of commerce of·a city, without the approval of the qualified voters therein ascertained by an election duly held for that purpose.

APPEAL by plaintiff from *Shaw, J.,* at chambers, 16 June, 1923, refusing a continuance of the restraining order which had been granted by *Stack, J.·*

This action was brought by the plaintiff on behalf of himself and other taxpayers of the city of High Point to test the validity of chapter 268, Private Laws 1923, entitled "An act to aid in the development of the city of High Point," which provides that the "Mayor and City Council of the City of High Point shall annually set apart and appropriate from the fund derived annually from the general taxes in said city an amount of not less than one-thirtieth of one per cent nor more than one-tenth of one per cent upon the assessed valuation of all real and personal property taxable in said city, which fund shall be used and expended under the direction and control of the directors of the Chamber of Commerce of High Point, N. C., under such rules and regulations as they shall prescribe for the purpose of aiding and encouraging the location of manufacturing, industrial, and commercial plants in and near said city, the encouraging of building railroads thereto, and for such other purposes as will, in the discretion of the said directors of the Chamber of Commerce of High Point, increase the population, taxable property, and business prospects of said city."

Upon application of the plaintiff and others, taxpayers of said city, to restrain the defendants, the city government, from levying, collecting, appropriating and disbursing said tax, upon the ground stated in the complaint, that the governing and taxing body of the city of High Point are without authority in law to levy said tax and collect the same and appropriate it to pay expenses of the chamber of commerce for the purposes stated in the act, for the reason that "the Chamber of Commerce of

the said city of High Point is no proper part of the said municipality and no department of the same, for the expenses and maintenance of which taxes can be levied and collected by the authorities of the town," and asked a restraining order and an injunction against the mayor and board of aldermen. A restraining order was issued by *Stack, J.,* on 12 June, 1923, returnable before *Shaw, J.,* on 23 June, who denied the motion for an injunction and dissolved the restraining order. Appeal by plaintiffs.

*J. Frank Flowers for plaintiffs.*
*Peacock & Dalton and King, Sapp & King for defendants.*

CLARK, C. J. The question presented is the validity of chapter 268, Private Laws 1923, which authorizes the levy and collection of taxes for the benefit of the chamber of commerce, to be expended at their discretion for the purposes set forth. The plaintiff contends that this is in direct contravention of the Constitution, Art. VII, sec. 7, which reads as follows: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith, or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

The defendants, in their answer, do not even allege that the amount thus to be levied and appropriated and turned over to the directors of the chamber of commerce is for the necessary expenses of the city of High Point, nor that it has been authorized by any vote of the qualified voters therein, nor that there has been any provision for an election to authorize the tax to be submitted to a vote of the people, as was done in. *Hudson v. Greensboro,* 185 N. C., 502.

It was not stated what was the amount of money thus sought to be levied and appropriated, though it was alleged in the argument here to be $30,000; but this is immaterial, for if money can be authorized to be appropriated for other than necessary expenses of the city, without a vote of the people, it can be for any amount and for any purpose whatever. The sole question is whether, not being for necessary expenses and not authorized by vote of the people, it can be imposed and collected simply under authority of an act of the Legislature.

If it can be appropriated for other than necessary expenses without a vote of the people for this purpose, it can be appropriated for any purpose whatever that the Legislature may authorize, and we know that in local matters acts for local purposes are passed usually on request of the members for the county in which the municipality is situated.

In *Keith v. Lockhart,* 171 N. C., 455, *Hoke, J.,* in a very clearly expressed and well-considered opinion, conceding that former opinions which had unduly restricted the meaning of necessary expenses of municipalities, had been given a wider construction in the opinion of *Fawcett v. Mount Airy,* 134 N. C., 125, by extending them to embrace furnishing lights and water, owing to the change in the customs and the necessities of the age requisite for those who live in cities, held that it was still requisite that necessary expenses, within the meaning of this act, should mean "the ordinary and usual expenditures reasonably required to enable a county (or other municipality) to properly perform its duties as part of the State government," and quotes *Jones v. Comrs.,* 137 N. C., 579-599, where the Court said: "The term may be said to involve and include the support of the aged and infirm, the laying out and repair of public highways, the construction of bridges, the maintenance of the public peace, and administration of public justice— expenses to enable the county to carry on the work for which it was organized and given a portion of the State's sovereignty." For the same reason, former decisions construing that "necessary expenses" did not include appropriations for education were overruled in *Collie v. Comrs.,* 145 N. C., 171.

In the latter case the extension of appropriations to education had been hampered by another provision of the Constitution restricting the rate of taxation. But all these cases extending the meaning of the words, "necessary expenses," were due to the enlarged scope of governmental expenses, causing a broader vision and a very proper growth in the recognized needs and requirements of municipal government. They were not based upon any idea that "necessary expenses" would take in matters which were not required as necessary governmental expenses. We know of no reason why the expenses and purposes of a nongovernmental body like a chamber of commerce should become necessary expenses of government. Those who compose such bodies are usually business men of standing, character, and influence in their respective communities, and they are actuated by patriotic motives to advance the public good. But they are in no sense governmental. They are neither elected nor appointed by public authority. They exercise no governmental duty; they have heretofore contributed not only their time, but of their means, but they are not required to do so, and have been actuated by motives for the public good. They are neither a charity nor educational.

If chambers of commerce, composed of business men and serving the advancement of the community in financial matters, can be termed governmental simply because they claim to be advancing the public wel-

fare, from their standpoint, and taxation can be levied upon the entire community to advance the ideas that "in their discretion" they deem for the public welfare, we know of no reason why the entire public shall not in like manner be taxed for the benefit of the Rotary clubs, Kiwanis clubs, and Lions clubs, who, also, as well as the chambers of commerce, are composed of many of our best citizens, and who in the same manner are actuated by patriotic motives to advance the public welfare. Then the ladies have their sororities, the Daughters of the Confederacy, and many other admirable societies for the public good; and there will be no reason why there should not also be embraced as subjects for support by taxation the labor unions, who in their sphere are equally patriotic and are endeavoring to advance the best interests of the community as they see it.

The limitation of the Constitution is very wise, and too clear for us to misconceive its meaning. It restricts taxation to necessary governmental purposes, except when a purpose outside that sphere has secured a majority vote of the registered voters authorizing taxation to be levied for such purpose. The Legislature has no power given it by the Constitution to authorize appropriation or a levy of taxes by the authorities of any county, city, or town, except for necessary expenses thereof, "unless authorized by a majority of the registered voters."

If the Legislature could pass beyond this line, there is no subject, and no extent, of taxation which would not be sought for and advocated by its friends. There would be a steady conflict between the friends of the different causes seeking public aid, and there would be an unlimited source of friction between them, and an unlimited amount of taxation resultant by a possible combination between the friends of powerful organizations.

We have the highest respect for the members of the chambers of commerce in our cities and towns, and believe that their motives are to serve the public welfare, just as we have for the other organizations named, but that does not make their support a "necessary expense" of the municipality, and, therefore, the public cannot be taxed under our Constitution for the support of these organizations unless a majority of the registered voters so decide. In like manner, if the cities and towns could be taxed for the support of the chambers of commerce the counties could be taxed for the support of the coöperative associations for the sale of tobacco and cotton, and the farmers union, for those bodies also have at heart the public interest.

Cases cited by defendants' counsel, if in any wise in point, are from other states, which presumably have not the same restrictive provision

in this regard as ours, or they are cases turning upon the question whether the expenditure is for a necessary governmental expense. There is none in our reports which is in conflict with the views we have expressed in this opinion.

The motion for an injunction should be granted, for there is no conflict as to the facts.

Reversed.