W. W. STORM v. THE TOWN OF WRIGHTSVILLE BEACH, AND GEORGE E. KIDDER, AS MAYOR OF THE TOWN OF WRIGHTSVILLE BEACH, AND J. A. TAYLOR, B. J. JACOBS AND L. S. STEIN AS ALDERMEN OF THE TOWN OF WRIGHTSVILLE BEACH.

(Filed 20 May, 1925.)

1. **Constitutional Law—Taxation—Faith and Credit—Municipal Corporations—Cities and Towns.**

   A town may not pledge its faith or credit for the issuance of bonds for municipal purposes, unless under statutory authority given in conformity with the requirements of the State Constitution, Art. II, sec. 14; by its passage on separate days by each branch of legislation, or when so given without the approval of its voters at an election held for the purpose, unless for necessary expenses. Const., Art. VII, sec. 7.

2. **Same—Necessary Expenses—Statutes—Seaside Resorts—Jetties.**

   What are necessary expenses for which a town may issue bonds without submitting the question to its electors for approval may, to some extent, vary in accordance with local conditions, and in this case of a seaside resort: *Held*, that an incinerator for the burning of refuse matter is necessary to health requirements, as well as the building of sea jetties for the preservation of the lands, were necessary expenses within the contemplation of Art. VII, sec. 7. *Held*, likewise, as coming within the term "necessaries," are systems of waterworks, constructing streets and sidewalks and boardwalks, enlarging sewer systems, and, where the special statute is unconstitutional, bonds for these purposes may be so issued under the Municipal Finance Act. C. S., vol. 3, sec. 2918.

3. **Same—Ratification—Ordinances.**

   Where a municipality has obtained temporary loans to pay for necessary expenses, C. S., 2932, 2934, 2935 (vol. 3), and thereafter seeks to issue bonds therefor under the provisions of the Municipal Finance Act, C. S., 2918, and the municipal authorities have accordingly ratified this indebtedness and included it with certain further sums for which the bonds are to be issued, it is a ratification and sufficient to sustain the issuance thus to be made.

APPEAL by plaintiff from *Dunn, J.*, submission of controversy without action, 25 April, 1925, NEW HANOVER.

Judgment for defendant—Affirmed.

The material facts are as follows:

The 1925 session of the General Assembly passed a Special Act entitled "An act to authorize the town of Wrightsville Beach to issue bonds." Under the provisions of the act, the town of Wrightsville Beach is authorized to issue bonds to the aggregate amount of $60,000 for the following purposes:

(1) Constructing or reconstructing jetties along the beach in the town of Wrightsville Beach, in order to protect the town against encroachments by the ocean and to build up the town; (2) acquiring

and improving a waterworks system or plant for the town; (3) constructing or reconstructing public boardwalks on the streets or other public places of the town; (4) constructing or acquiring an incinerator for the destruction of garbage in the town; (5) enlarging the sewer system of the town; and (6) funding or paying $13,000 of outstanding indebtedness of the town incurred before 6 March, 1925, for the purpose of constructing jetties as aforesaid and constructing a sewer system for the town.

The bonds are to be issued without a vote of the people of the town and are to be issued either under the authority of the special act referred to, or under "The Municipal Finance Act, 1921," (Consolidated Statutes, vol. 3, sec. 2918).

The Senate Journal shows that the first and second readings of the bill (the special act hereinabove referred to) in the Senate took place on the same day.

The court was of the opinion that for this reason the special act was unconstitutional, but was further of the opinion that all of the purposes for which the bonds are to be issued are for necessary expenses and that therefore, the town of Wrightsville Beach has authority to issue the same, independently of the special act, and under the authority of the Municipal Finance Act, and thereupon signed the following judgment:

"This controversy without action, coming on to be heard by consent of the parties before his Honor, Albion Dunn, judge, on 25 April, 1925, and after hearing the same upon the agreed case herein, and hearing the arguments of counsel for the plaintiff and the defendants, the court is of the opinion that all of the purposes for which bonds herein referred to are to be issued, constitute necessary expenses of the town of Wrightsville Beach within the meaning of section 7, Article VII, of the Constitution of North Carolina, and while the court is of the opinion that the act of the General Assembly of 1925, being entitled, 'An act to authorize the town of Wrightsville Beach to issue bonds,' ratified 6 March, 1925, was not enacted in accordance with the requirements of the Constitution of North Carolina, yet the proper officers of the town of Wrightsville have authority under the Municipal Finance Act of 1921 to issue said bonds, and that, therefore, the issuance of said bonds for the purposes set out in the agreed case herein, should not be enjoined.

"The court further finds as a fact that all requirements of the Municipal Finance Act of 1921 have been complied with and that the said bonds issued thereunder will be a valid and binding obligation of the said town of Wrightsville Beach."

Plaintiff excepted to the judgment, assigned error and appealed to the Supreme Court.

STORM v. WRIGHTSVILLE BEACH.

*K. O. Burgwyn for plaintiff.*
*Marsden Bellamy and Reed, Dougherty & Hoyt for defendant.*

CLARKSON, J.   Are the purposes for which the town of Wrightsville Beach desires to issue $60,000 in bonds "necessary expenses" within the meaning of section 7 of Art. VII, of the Constitution of North Carolina? We think they are, and "a vote of the majority of the qualified voters therein" is not necessary.

The constitutional provision is as follows: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

The question, what is a necessary expense, which is a judicial one for the courts to determine, is one that cannot be defined generally so as to fit all cases which may arise in the future. As we progress, we look for better moral and material conditions and the governmental machinery to provide them. "Better access to the good things of life for all people," safety, health, comfort, conveniences in the given locality. Webster defines necessary: "A thing that is necessary or indispensable to some purpose; something that one cannot do without; a requisite; an essential." What is a necessary expense for one locality may not be a necessary expense for another. *Fawcett v. Mt. Airy,* 134 N. C., p. 125; *Keith v. Lockhart,* 171 N. C., p. 451.

It is conceded by able counsel of both parties to this controversy, that waterworks and sewerage system included in the bond issue are necessary expenses.

The term in the Constitution "necessary expenses" is not confined to expenses incurred for purposes absolutely necessary to the very life and existence of a municipality, but it has a more comprehensive meaning. It has been held in this jurisdiction that streets, waterworks, sewerage, electric lights, fire department and system, municipal building, market house, jail or guard house are necessary expenses. *McLin v. New Bern,* 70 N. C., 12; *Fawcett v. Mt. Airy, supra; Greensboro v. Scott,* 138 N. C., 181; *Comrs. v. Webb,* 148 N. C., 122; *Hightower v. Raleigh,* 150 N. C., 569; *Bradshaw v. High Point,* 151 N. C., 517; *Jones v. New Bern,* 152 N. C., 64; *Underwood v. Asheboro,* 152 N. C., 641; *Hotel Co. v. Red Springs,* 157 N. C., 137; *Robinson v. Goldsboro,* 161 N. C., 668; *Gastonia v. Bank,* 165 N. C., 511; *Leroy v. Elizabeth City,* 166 N. C., 93; *Power Co. v. Elizabeth City,* 188 N. C., 296.

Plaintiff contends that expenditures for jetties are not a necessary expense, and says: "It is noteworthy also that it has never been decided that expenditures for the garbage incinerator or for boardwalk are necessary expenses."

If streets are a necessary expense, it naturally follows that sidewalks are. 28 Cyc., p. 833: "The sidewalk is the part of the street set apart for pedestrians. The word 'street,' as ordinarily used, includes a sidewalk, although it is sometimes used in its restricted sense as including only the roadway."

The very name of defendant—Wrightsville Beach—indicates it is a town on the beach, and it is a matter of common knowledge that it prospers mostly by its summer visitors and tourists. They go there for health and recreation. The location of the hotels, boarding houses and other houses will naturally be along the beach, and "it goes without saying" that boardwalks are a necessary expense to conveniently get from place to place in that kind of locality.

An incinerator for the destruction of garbage in a town, of all things, especially a town on a beach that functions mostly in the summer, is a necessary expense. It eliminates the odor that comes from filth and is a great health precaution. It destroys the breeding place of flies—annoying, to say the least, to man and beast. It is a medical fact that flies breed so rapidly that in a short period their increase is enormous. Of course they die, but they must have filth to breed in and food to live on. The breeding places must be eliminated; if not, from these places of filth they come into the habitation of man (hence the growth in screening), and pollute and poison food and drink. To this army of little marauders, the medical fraternity claim that in consequence of this filth- and disease-carrying fly, not only the strong, but the weak and especially children are liable to, in common parlance, "catch" such diseases as typhoid fever, dysentery, diarrhea of infants, etc. The old saying is "Cleanliness is indeed next to Godliness." Many cities and towns in the State have erected incinerators and taken it for granted that this Court would hold they were a necessary expense. The idea is as old as the Mosaic law."

"Municipal corporations are usually given more power to abate nuisances, and to suppress sources of filth and causes of disease. Under this power a municipal corporation may undertake the task itself and provide an incinerator to consume garbage and dead animals and similar substances, as a means of conserving the health of the inhabitants." 19 R. C. L., p. 787.

The Century Dictionary defines "jetty," in part: "A projection of stone, brick, wood, or other material (but generally formed of piles) . . . serving as a protection against the encroachment or assault of the waves; also, a pier of stone or other material projecting from the bank of a stream obliquely to its course, for the purpose of directing the current upon an obstruction to be removed, as a bed of sand or gravel, or to deflect it from a bank which it tends to undermine."

In the agreed state of facts (6) is the following: "The town of Wrightsville Beach has been encroached upon by the ocean and such encroachments are likely to continue and may cause serious loss and damage to said town unless checked or prevented by means of jetties to be constructed along the beach or ocean front."

The locality of the beach, a matter of common knowledge, the topography of the land, the storms in the vicinity and the effect of the waves eating into the beach and destroying it, all are determining factors on the question of necessary expense. The governing body of the municipality has determined the need of these jetties. No fraud or abuse of discretion being shown, we think, under the facts and circumstances of this case, that they are a necessary expense.

The Municipal Finance Act, 1921 (Consolidated Statutes, vol. 3, sec. 2918 et seq.), provides (section 2937), as follows: "A municipality may issue its negotiable bonds for any one or more of the following purposes: 1. For any purpose or purposes for which it may raise or appropriate money except for current expenses."

The defendant has heretofore contracted certain indebtedness—$9,000—for jetties "in order to protect said beach against damage from storms and the waves of the ocean and to build up the beach." It has heretofore contracted certain indebtedness—$4,000—"for the purpose of paying the cost of constructing and enlarging the sewerage system of said town." The bond ordinances recite in regard to said indebtedness "which temporary indebtedness is hereby ratified and confirmed, notwithstanding that it was incurred prior to the passage of this ordinance."

Under the view we take as to what are necessary expenses, bonds under the finance act can be issued for the indebtedness heretofore incurred, with the ratification provision above recited. We think, under such circumstances, the subsequent ratification cures the prior requisite of the statute. C. S., 2932-4-5, vol. 3, "Temporary Loans." Although we think it better to follow the statute in the first instance.

In *Construction Co. v. Brockenbrough*, 187 N. C., p. 77, we said: "As was said in *Board of Education v. Comrs., supra* (183 N. C., p. 302): 'Subject to certain exceptions, the general rule is that the Legislature may validate retrospectively any proceeding it might have authorized in advance.'" The municipality can do the same.

We think the town of Wrightsville Beach had the legal right to pass the ordinances set forth in the case agreed—ordinances authorizing the issuance of bonds for the construction, etc., of water works and system $26,000, jetties $25,000, sewer system $5,500, public boardwalks $3,500—Total $60,000.

The governing body has the sound discretion to determine matters of this kind. This extensive power, given by the Legislature to munici-

palities should be exercised with the utmost deliberation and consideration for the best interest of all the people of the municipalities.

In *Harris v. Durham,* 185 N. C., p. 577, we said: "These powers should be used with caution for the common good, without extravagance or waste, but with economy and care." The courts will not go behind this discretion, unless for fraud or abuse of discretion. Of course, the municipality must have legislative power.

The special enabling act, ratified 6 March, 1925, is clearly unconstitutional *because the journal of the State Senate affirmatively shows that the first and second readings of the bill in the Senate took place on the same day,* in violation of section 14, Art. II of the State Constitution, as follows: "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or allow the counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the general assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal." This provision is mandatory and the proposition established by the decision in *Smathers v. Comrs.,* 125 N. C., 480, 34 S. E., 554. See, also, *Glenn v. Wray,* 126 N. C., 730; *Black v. Comrs.,* 129 N. C., 121; *Comrs. v. DeRosset,* 129 N. C., 275; *Brown v. Stewart,* 134 N. C., 357; *Comrs. v. Packing Co.,* 135 N. C., 62; *Claywell v. Comrs.,* 173 N. C., 657; *Road Comrs. v. Comrs.,* 178 N. C., 61. A different state of facts were presented in *Brown v. Comrs.,* 173 N. C., 598, and *Edwards v. Comrs.,* 183 N. C., 58.

On the entire record, we think the judgment of the court below correct. The judgment below is

Affirmed.