CLARKSON, J., dissenting. *Page 270 
This is a controversy without action upon the following statement of facts:
1. Plaintiff, T. A. Henderson, is a citizen, resident and taxpayer of the city of Wilmington, State of North Carolina.
2. The defendant, city of Wilmington, is a municipal corporation, duly created under the laws of the State of North Carolina. The defendant, Walter H. Blair, is mayor of said city, and the defendants, Joseph E. Thompson and James E. L. Wade, are commissioners of said city.
3. On 18 November, 1925, the board of commissioners of the city of Wilmington, passed an ordinance providing for the issuance of bonds not to exceed the amount of $100,000, pursuant to the Municipal Finance Act. After the introduction and before the final passage of said ordinance, an officer designated by the board of commissioners for that purpose, made and filed with the clerk of said city, the statement it appeared that the net debt of the city of Wilmington, including the said $100,000 of bonds, did not exceed 8 per cent of the assessed valuation of property in said city, as last fixed for municipal taxation. Said ordinances were published in a newspaper published in the city of Wilmington, in accordance with law. The said ordinance is in words and figures as follows:
"An Ordinance Authorizing the Issuance of Bonds for the Construction ofPublic Municipal Docks and Terminals:
"Be it ordained, by the board of commissioners of the city of Wilmington, North Carolina, and it is hereby ordained by authority thereof as follows:
SECTION 1. Pursuant to the Municipal Finance Act, bonds of the city of Wilmington are hereby authorized to be issued in an aggregate principal amount not exceeding $100,000 for the purpose of paying the cost of constructing public municipal docks and terminals at or near the property known as the Old Liberty Shipyard, on the Cape Fear River, said public docks and terminals to be used for the purpose of shipping, both foreign and coastwise.
"SEC. 2. A tax sufficient to pay the principal and interest of said bonds shall be annually levied and collected.
"SEC. 3. It is hereby determined, pursuant to the requirements of the Municipal Finance Act, that a statement of the debt of the city of Wilmington has been filed with the city clerk, and is open to public inspection. *Page 271 
"SEC. 4. It is hereby determined that all expenses to be defrayed by means of the bonds hereby authorized are necessary expenses of the city of Wilmington, within the meaning of section 7, Art. VII, of the Constitution of North Carolina.
"SEC. 5. This ordinance shall be published once in each of the two successive weeks after its final passage.
"SEC. 6. This ordinance shall take effect thirty days after its first publication, unless in the meantime, a petition for its submission to the voters is filed under the Municipal Finance Act, and in such event it shall take effect when approved by the voters of the city of Wilmington, at an election as provided in said act."
4. The defendants will, unless restrained by an order of this court, proceed at once to issue $100,000 of bonds of the city of Wilmington as provided for in said ordinance, for the purpose therein expressed, without a vote of a majority of the qualified voters of said city, and the question of issuing said bonds for such purpose has not been submitted to the voters of said city at an election.
5. The defendant, city of Wilmington, is the owner of a certain tract of land lying partly within, and partly without, the city limits, and having considerable river front, which property was formerly known as the Liberty Shipyard, and was conveyed to the city of Wilmington by the United States Shipping Board Emergency Fleet Corporation, upon certain terms and conditions hereinafter more fully set out. That said tract of land constitutes the only available water front at or near the city of Wilmington, on which public docks and other terminal facilities can be erected. That while private interests have constructed adequately equipped docks and terminals on the river at, and near, the city of Wilmington, and although such terminals may be operated under publicly regulated charges, the existence of publicly owned docks and terminals is necessary to insure that equality of facilities and service, which is demanded by the shipping interests.
6. That the city of Wilmington is largely dependent for its material welfare and progress upon the proper development of its port, and that in order for said city to compete with other coastal cities on the South Atlantic Seaboard, it is necessary for said city to offer to shipping interests adequate publicly owned docks and terminal facilities.
7. The United States Board of Engineers has adopted a rule requiring municipalities to make adequate provision for utilizing waterway development, such as docks and other terminal facilities, as a condition precedent to the approval of water-way development projects.
8. There are at present, two major water-way development projects for the Port of Wilmington, viz.: a thirty-foot depth, with a 400-foot *Page 272 
channel from the bar to the city, and the construction of the intercoastal water-way from Beaufort to the Cape Fear River, and that the construction of public municipal docks and terminal facilities as provided for in said proposed bond issue is calculated to materially aid in the securing of both of these projects.
9. That on 11 September, 1920, the United States Shipping Board Emergency Fleet Corporation, by deed duly executed, conveyed to the city of Wilmington, the lands and premises hereinabove referred to and upon which it is proposed to construct said public municipal docks and terminals. Said deed is in words and figures, in part, as follows:
"DISTRICT OF COLUMBIA } } ss. "CITY OF WASHINGTON }
"Indenture made and executed this the eleventh (11th) day of September, A. D. nineteen hundred twenty (1920), by and between the United States Shipping Board Emergency Fleet Corporation, a corporation organized and existing under the laws of the District of Columbia, representing and acting for the United States of America, (herein called the grantor), party of the first part, and the city of Willington, of the State of North Carolina, a municipal corporation, (herein called grantee), party of the second part:
"Whereas, the said grantee, during the year nineteen hundred eighteen (1918), was instrumental in procuring the donation to the grantor of the land or real estate hereinafter described; and,
"Whereas, the inducement to the said grantee was the location and maintenance by the said grantor of a shipyard at or near the city of Wilmington, in the State of North Carolina, and,
"Whereas, the grantor has ceased to operate the shipyard upon said real estate; and,
"Whereas, it is desired, as a matter of public policy, that the grantor shall assist in the maintenance of ports and terminals upon the eastern seaboard of the United States, as enjoined upon it by law; and,
"Whereas, the grantee is willing to accept a conveyance of said land or real estate subject to a condition to maintain perpetually free port and terminal facilities upon the real estate hereinafter described; and,
"Whereas, at a meeting duly held by the board of trustees of the grantor, said United States Shipping Board Emergency Fleet Corporation, in the city of Wilmington, District of Columbia, on the eleventh (11th) day of September, nineteen hundred twenty (1920), the following resolution was unanimously adopted by said board of trustees: *Page 273 
(Here follows resolution.)
"Now, therefore, this indenture witnesseth: That the said grantor, in consideration of the premises and in further consideration of the sum of thirty-seven thousand five hundred dollars ($37,500), in hand paid by the grantee, the receipt whereof is hereby acknowledged, has granted, sold, conveyed, and confirmed, and by this indenture does hereby grant, bargain, sell, convey and confirm to the city of Wilmington, the following described real estate, to wit: (Here follows description of property.)
To have and to hold the aforegranted and above described parcels of land, together with all the appurtenances and rights, unto the said grantee and its successors and assigns forever, upon condition, however, that the said grantee, its successors and assigns, will, within ten (10) years from the date of this instrument, create and erect upon such portion of said real estate as is appropriate and necessary therefor, free port and terminal facilities, and will, from and after the expiration of said term of years, perpetually and continuously maintain upon said real estate such free port and terminal facilities, and the further condition that whenever said grantee, its successors and assigns, shall fail to keep and maintain, after the expiration of said term of years, free port and terminal facilities upon said land or real estate, then, and in that event, the said land or real estate shall revert to, and the title shall vest in, the grantor, or, if the grantor is not then in existence, to the United States Shipping Board, or, if the United States Shipping Board is not then in existence, to the United States of America, and the said grantor, for itself and its successors, hereby covenants and agrees to and with the said grantee, its successors and assigns, to warrant and defend the title to the above described tracts or parcels of land against the lawful claims of all persons."
10. That there are no funds available for the construction of said docks and terminals except the proceeds of the proposed bond issue, and that unless said docks and terminals are constructed by the city of Wilmington, within the time limited in said deed, the real estate therein conveyed to the city of Wilmington, will, under the terms thereof, revert to the grantor and the defendant, city of Wilmington, will be divested of all interest or estate therein.
11. The plaintiff maintains that the issuance of said bonds as aforesaid, will be unlawful for the reason that the issuance of said bonds would be in violation of section 7, Art. VII, of the Constitution of North Carolina, which declares that no town shall contract a debt, or levy a tax, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein, that the construction of public municipal docks and terminals on the lands and premises referred to, is *Page 274 
not a necessary expense within the meaning of said section of the Constitution of North Carolina, and that, therefore, the issuance of bonds for said purpose, without first obtaining the approval of the voters of said town as required by said section of the Constitution will be unlawful.
12. On the other hand, the defendants maintain that the issuance of said bonds as aforesaid will not be unlawful for the reason that the construction of public municipal docks and terminals, is a necessary expense within the meaning of section 7, Art. VII, of the Constitution of North Carolina, and that, therefore, said bonds may be lawfully issued without submitting the same to a vote of the people and obtaining a vote of the majority of the qualified voters.
13. The plaintiff maintains that upon the foregoing facts, he is entitled to judgment restraining and enjoining the defendants from issuing said bonds. The defendants maintain that the issuance of said bonds as aforesaid, should not be enjoined.
14. It is agreed, that if, upon the foregoing facts, the court shall be of the opinion that said bonds, or any of them, will be invalid, judgment shall be rendered enjoining and restraining the defendants from issuing said bonds.
Judge Daniels was of opinion that while all the requirements of the Municipal Finance Act of 1921 had been complied with, the purpose for which the bonds are to be issued does not constitute a necessary expense of the city of Wilmington within the meaning of Art. VII, sec. 7, of the Constitution of North Carolina, and that said bonds cannot legally be issued without submitting the question to a vote of the people as provided in Art. VII, sec. 7, and restrained and enjoined the defendants from issuing the bonds under the ordinance set out in the agreed case. The defendants excepted and appealed to the Supreme Court.
The Constitution, Art. VII, sec. 7, provides: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein." The necessity of a rigid observance of this provision has been pointed out and reiterated in our decisions and emphasized by special legislative enactment. C.S., 2691. In analyzing and construing this section in its relation to the sixth section of Article 5, the Court has held: (1) That for necessary *Page 275 
expenses the municipal authorities may levy a tax up to the constitutional limitation without a vote of the people and without legislative permission; (2) that for necessary expenses they may exceed the constitutional limitation by legislative authority, without a vote of the people; (3) that for purposes other than necessary expenses a tax cannot be levied either within or in excess of the constitutional limitation except by a vote of the people under special legislative authority. Herring v. Dixon,122 N.C. 420; Tate v. Comrs., 122 N.C. 812.
The qualified voters of the city have had no opportunity to express their will on the far-reaching question of building docks to be used in "shipping, both foreign and coastwise," and there is no pretense that the indicated tax will be within the constitutional limitation. Therefore the bonds can be issued and the tax levied, if at all, only upon the principle stated in the second class, — that is, that the bonds are authorized by the Legislature and are to be issued for a necessary expense of the city. It is provided by statute that any city shall have the right to acquire, establish and operate waterworks, electric lighting systems, gas systems, schools, libraries, cemeteries, market-houses, wharves, play or recreation grounds, athletic grounds, parks, abattoirs, sewer systems, garbage and sewage disposal plants, auditoriums or places of amusement or entertainment, armories, rest rooms, a system of public charities, etc., and that reasonable appropriations for these purposes shall be "subject to the provisions of the Constitution of the State." C.S., 2832. That is, if the purpose involves a necessary expense, as, for example, a market-house or a municipal lighting system, the assent of the qualified voters is not essential; but if the purpose does not involve a necessary expense, as, for instance, a hospital or place of amusement, the will of the voters must be ascertained. It is also provided that for certain of these purposes land may be acquired by purchase or condemnation. C.S., 2791, 2792; Laws 1917, ch. 136, subch. 4, sec. 1; Laws 1919, ch. 262.
The constitutionality of these acts is not in question. The Legislature has not said that the purposes enumerated involve a necessary expense (although some, but not all, do); for this is a question of law. Since the appropriations are "subject to the provisions of the Constitution" they must conform to the Constitution; and for this reason there is no conflict between the statute and the organic law.
The bonds are to be issued for the purpose of constructing "public municipal docks and terminals." Neither the word "docks" nor the word "terminals" appears in the statute we have cited; and "wharves," which is found in the statute, does not appear in the ordinance. But we make no point on the technical distinction between a "dock," a "wharf" *Page 276 
and a "terminal"; we grant for the present purpose only that "wharves" may be treated as synonymous with or at least as including "docks and terminals." It will be conceded, we presume, that a municipality may not engage in the business of erecting wharves or docks unless expressly authorized by its charter or by statute. This principle is elementary. If the statute (C.S., 2832) authorizes the defendants to acquire, establish, or operate a wharf, it also prescribes a definite constitutional limitation under which the authority may be exercised; and if the statute had not prescribed it, the Constitution has. This limitation is "a vote of the majority of the qualified voters" in the city, unless the construction of the proposed wharf or dock is a necessary municipal expense. Whether it is a necessary expense within the meaning of the Constitution is the question to be determined.
With the mere utility of the enterprise we are not concerned. Whether "shipping, foreign and coastwise" would expand commerce is alien to the principle we are considering. The convenience, the benefit to be conferred upon a particular class, the insufficiency of present facilities, and a want of opportunity for commercial or industrial competition — these and similar premises are not factors that can control or even contribute to our solution of the present controversy. We are dealing exclusively with a question of law, with the legal formalities necessary to pledging the faith of the city by issuing bonds for the contemplated purpose; and as these formalities are mandatory they may not be disregarded or ignored.
It is admitted, we understand, that the term "necessary expense" includes law and fact, and, as used in the Constitution and in contracts purporting to incur municipal indebtedness, that it involves matters, not for legislative, but for judicial determination. Storm v. WrightsvilleBeach, 189 N.C. 679; Black v. Comrs., 129 N.C. 121; Mayo v. Comrs.,122 N.C. 5, overruled on another point in Fawcett v. Mt. Airy, 134 N.C. 125. This is recognized by the Legislature in its statutory definition of "necessary expenses" as the necessary expenses referred to in Art. VII, sec. 7, of the Constitution. 3 C.S., 2919. Also in the provision: "If a bond ordinance provides for the issuance of bonds for a purpose other than the payment of necessary expenses of the municipality, the approval of a majority of the qualified voters of the municipality as required by the Constitution of North Carolina, shall be necessary in order to make the ordinance operative." 3 C.S., 2948. It is plain, then, that neither the finding of the defendants (as stated in the fourth section of their ordinance) that the expenses to be defrayed are necessary expenses, nor the rule, adopted by the United States Board of Engineers requiring municipalities to make adequate provision for utilizing docks and other terminal facilities, nor yet any executory provision in the deed of the United States shipping board Emergency Fleet *Page 277 
Corporation can have the least bearing or influence upon our interpretation of the constitutional provision.
In defining "necessary expense" we derive practically no aid from the cases decided in other States. We have examined a large number of such cases apparently related to the subject and in each one we have found some fact or feature or constitutional or statutory provision antagonistic to or at variance with the section under consideration. We must rely upon our own decisions.
In Wilson v. Board of Aldermen, 74 N.C. 748, 759, Rodman, J., said that it would be difficult, if not impossible, to draw a precise line between what are and what are not the necessary expenses of the government of a city; and in Fawcett v. Mt. Airy, 134 N.C. 125, Montgomery, J., remarked that it would be almost impossible to state in legal phraseology the meaning of the words "necessary expense" as applied to the wants of a city or town government. The definition given in Jones v. Comrs.,137 N.C. 579, 599, indicates less restraint and less doubt. There it is said by Hoke, J., "They (necessary expenses) involve and include the support of the aged and infirm, the laying out and repair of public highways, the construction of bridges, the maintenance of the public peace and administration of public justice — expenses to enable the county to carry on the work for which it was organized and given a portion of the State's sovereignty." In a subsequent decision the same writer observes that the term more especially refers to the ordinary and usual expenditures reasonably required to enable a county properly to perform its duties as a part of the State government. Keith v. Lockhart, 171 N.C. 451, 456. This feature is again stressed in Ketchie v. Hedrick, 186 N.C. 392, in which the late Chief Justice Clark said: "But all these cases extending the meaning of the words, "necessary expenses," were due to the enlarged scope of governmental expenses, causing a broader vision and very proper growth in the recognized needs and requirements of municipal government. They were not based upon any idea that "necessary expenses" would take in matters which were not required as necessary governmental expenses."
By virtue of this interpretation it has been held that among necessary expenses may be classed those incurred by a city or town for streets, lights, water, sewerage, a fire department, an electric fire-alarm, an incinerator, a municipal building, a markethouse, a jail or guard-house, and jetties for the protection of a village bordering on the water; and among expenses not necessary may be grouped those for schools and schoolhouses (see, however, Collie v. Comrs., 145 N.C. 170), hospitals, rights of way for railroads, and manufacturing, industrial, and commercial enterprises. Storm v. Wrightsville Beach, supra; and cases cited; Brown v.R. R., 188 N.C. 52; Ketchie v. Hedrick, supra; *Page 278 Armstrong v. Comrs., 185 N.C. 405; Williams v. Comrs., 176 N.C. 554;Stephens Co. v. Charlotte, 172 N.C. 564; Keith v. Lockhart, supra;Sprague v. Comrs., 165 N.C. 603.
The cases declaring certain expenses to have been "necessary" refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the contrary. Hartsfield v. New Bern, 186 N.C. 136, is not in conflict with this position. There the question of levying a tax or pledging the credit of the city did not arise. Article VII, sec. 7, of the Constitution was not construed or discussed; it was not referred to in the opinion. In that case the plaintiffs sought to enjoin the city of New Bern from acquiring an easement in a strip of land about twenty feet in width extending from the tracks of the Atlantic and North Carolina Railroad to Union Point; and they based their suit upon the allegation that the act of the Legislature giving the city the right of eminent domain was a private act passed without the preliminary notice of thirty days and without evidence of three several readings on three different days. Const., Art. II, secs. 12, 14. Upon this question the appeal was prosecuted; not upon that of levying a tax or pledging the credit of the city. The reference in the reported case to municipal wharves as "public necessities" appears incidentally in the preliminary statement. It is not a part of the opinion; so it cannot be accepted as a precedent or as the expression of the Court. The controversy had reference to the exercise under legislative grant of the city's alleged right to condemn the plaintiffs' land to enable a railroad built principally by the State and certain counties, including Craven, to extend its track to the water front.
In Scales v. Winston-Salem, 189 N.C. 469, the plaintiff asked damages for personal injury alleged to have resulted from the negligent construction of an incinerator. In pointing out the distinction between acts done for the private benefit of the city and those done in the performance of a governmental power, we quoted from the opinion in Moffittv. Asheville, 103 N.C. 237, 254, in which Avery, J., said: "The grading of streets, the cleansing of sewers, and keeping in safe condition wharves from which the corporation derives a profit are corporate duties." InMoffitt's case and in Scales' case, the question was that of the defendant's liability for negligence; neither has anything to do with Art. VII, sec. 7, of the Constitution. There are many "corporate duties" which are utterly remote from those relating to necessary expenses. The duty of keeping a wharf in safe condition after the city has lawfully established or acquired it is altogether separate and distinct from obedience to the mandate that a wharf shall not be established or acquired by pledging the city's credit or levying a tax without the assent of the qualified voters. In Adams v. Durham, 189 N.C. 232, it was *Page 279 
held that the building of an auditorium for the convenience of the city, while not a necessary expense, was a public purpose, and that the city authorities could use money already on hand in the erection of such building. Chief Justice Hoke remarked that Art. VII, sec. 7, did not apply because the expenditure would impose no further liability and would require no further taxation. Suppose the city of Wilmington had in its treasury money enough to construct the proposed docks and with this money should build them and use them for a profit; or, suppose the qualified voters should approve the sale of the bonds and the levy of a special tax and out of the proceeds the city should build the docks and use them for a profit; in either event it would be incumbent upon the city to keep the docks in repair and a negligent failure to perform this "corporate duty" would lay the foundation of a suit in damages, as in case of failure to perform any similar corporate duty whether the "purpose" did or did not originally involve necessary expense. This principle is not new: it is upheld in a number of our decisions. Fisher v. New Bern, 140 N.C. 506; Harrington v.Wadesboro, 153 N.C. 437; Terrell v. Washington, 158 N.C. 281; Woodie v.North Wilkesboro, 159 N.C. 353; Harrington v. Greenville, ibid., 632.
But none of these cases decides the specific question under review. The decisions heretofore rendered by the Court make the test of a "necessary expense" the purpose for which the expense is to be incurred. If the purpose is the maintenance of the public peace or the administration of justice; if it partakes of a governmental nature or purports to be an exercise by the city of a portion of the State's delegated sovereignty; if, in brief, it involves a necessary governmental expense — in these cases the expense required to effect the purpose is "necessary" within the meaning of Art. VII, sec. 7, and the power to incur such expense is not dependent on the will of the qualified voters. Now, for what purpose are the bonds to be issued and the tax levied? As previously indicated, to build docks and terminals "to be used for the purpose of shipping, both foreign and coastwise." Ordinance, sec. 1. This is primarily a business venture; and as such it is unrelated to the administration of justice or to any governmental function; it does not involve a "necessary expense." The power to tax is restricted; and the Constitution has wisely ordained that a municipal corporation shall not without the assent of a majority of the qualified voters levy a tax in aid of an enterprise of this character. The proposed undertaking is local. If it were an enterprise upon which the whole State had embarked a different question might arise; for the Court has held that the restrictions contained in Art. VII, sec. 7, are confined to local measures and do not include those which affect the entire commonwealth. Bank v. Lacy, 183 N.C. 373; Lovelace v. Pratt, 187 N.C. 686. *Page 280 
The defendant reminds us, as suggested in Storm v. Wrightsville Beach,supra, that we should "look for better moral and material conditions and governmental machinery to provide them." We may also admit the force of the statement that "the luxuries of one generation have become the necessities of another." Swindell v. Belhaven, 173 N.C. 2. Nor are we inadvertent to the cases, long since overruled, in which it was held that expenses incurred for lights and water were not "necessary." Mayo v. Comrs., supra;Thrift v. Elizabeth City, 122 N.C. 31. But we must not lose sight of the fact that each of these progressive changes was governmental in its nature. Upon the same principle conditions are conceivable in which the establishment of a wharf might be deemed to involve a necessary expense; but in this case such conditions do not appear.
The proposed bonds are not required as a necessary governmental expense and cannot be issued under the ordinance adopted by the defendants. The judgment is
Affirmed.