J. M. PALMER, a CITIZEN AND TAXPAYER OF HAYWOOD COUNTY, IN BEHALF OF HIMSELF AND OTHER CITIZENS AND TAXPAYERS OF HAYWOOD COUNTY, NORTH-CAROLINA, v. THE COUNTY OF HAYWOOD, a BODY POLITIC AND CORPORATE, AND J. A. LOWE, R. T. BOYD, T. R. MOORE, G. C. ROGERS, G. C. PALMER, C. C. MEDFORD, AND JARVIS ALLISON, BOARD OF COMMISSIONERS OF HAYWOOD COUNTY, NORTH CAROLINA.

(Filed 3 November, 1937.)

1. **Taxation § 4—County may not issue bonds to build annex to county hospital without submitting question to vote.**

Defendant county proposed to issue bonds to construct an annex to its county hospital, to be used principally for the care of the indigent sick of the county, without submitting the question to a vote. *Held:* The building of an annex to the county hospital is not a necessary expense of the county within the meaning of Art. VII, sec. 7, of the Constitution of North Carolina, and plaintiff taxpayer is entitled to an order restraining the issuance of the bonds.

2. **Same—**

What are necessary expenses of a county or municipality within the meaning of the Constitution is a question of law for the courts.

3. **Taxation § 5—**

Taxes may be levied only for a public purpose. Art. V, sec. 3, of the Constitution of North Carolina.

CONNOR, J., concurring.

BARNHILL, J., dissenting.

CLARKSON, J., concurs in dissenting opinion.

APPEAL by plaintiffs from *Alley, J.,* at Chambers, from HAYWOOD.

Action for injunction against issuance of county bonds to build annex to county hospital.

Bonds are proposed to be issued under the following resolution: "Be it ordered by the board of county commissioners of the county of Haywood as follows: .(1) For the purpose of constructing an addition to the county hospital, which shall be used principally for the care of indigent sick and afflicted poor of the county, bonds of the county shall be issued to the aggregate amount of $30,000. (2) A tax sufficient to pay the principal and interest of the bonds when due shall be annually levied and collected. (3) A statement of the county debts has been filed with the clerk and is open to public inspection. (4) This order shall take effect 30 days after the first publication thereof after final passage unless in the meantime a petition for its submission to the voters is filed under the County Finance Act, and in such event it shall take effect when approved by the voters of the county at an election, as provided in the said act."

The time for filing petition for an election on the issuance of the bonds has expired and no petition has been filed. Defendants were about to issue the bonds when restrained in this action. On hearing below, parties agreed that the court might find the facts. The court found, among other things, in substance that: About 1927 the county of Haywood, pursuant to Art. II, ch. 119, of the Consolidated Statutes of North Carolina entitled "Municipal Hospitals," after an election as therein provided, and upon approval of a majority of the qualified voters of the county, issued and sold bonds of the county for the purpose of building and did build a county hospital "for the care of the sick of the county and others who might be brought for treatment." The hospital, at the time of its erection, was deemed and considered adequate for the needs. The county has been able to maintain said hospital under proper standards, but the *patronage* thereof has grown and increased until the hospital is now inadequate and insufficient to care for many patients brought in, and in particular for the indigent sick of Haywood County. The hospital has a normal capacity of 55 beds with emergency capacity of 65 beds. In 1936 of 26,644 patient days, 19,473 received contribution from private indigent fund. It has become necessary to enlarge the hospital by building an annex which is contemplated to be "used principally for the care of indigent sick and afflicted poor of the county." Thereupon the court adjudged that "the proposed issuance of bonds and the levying of a tax by the defendants, as hereinbefore set out, is a necessary expense and not in violation of Art. VII, sec. 7, of the Constitution of North Carolina, or other provision of the Constitution or statutes of the State." Motion for restraining order against the issuance of bonds and levying of taxes as proposed was denied.

From adverse judgment plaintiffs appealed to the Supreme Court and assigned error.

PALMER *v.* HAYWOOD COUNTY.

*W. T. Crawford for plaintiff, appellant.*
*J. R. Morgan for defendants, appellees.*

WINBORNE, J. The question: Is the building of annex to county hospital a necessary expense within the meaning of Art. VII, sec. 7, of the Constitution of North Carolina? The answer is "No."

Art. VII, sec. 7, reads: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

What are necessary expenses is a question for judicial determination. The judicial decisions in this State uniformly so hold. "The courts determine what class of expenditures made or to be made by a municipal corporation come under the definition of 'necessary expense.' The governing authorities of the municipal corporations are vested with the power to determine when they are needed. . . . That is to say, the courts determine whether a given project is a necessary expense of a municipality, but the governing authorities of the municipality determine in their discretion whether such given project is necessary or needed in the designated locality." *Starmount Co. v. Hamilton Lakes,* 205 N. C., 514, 171 S. E., 909; *Black v. Comrs.,* 129 N. C., 121, 39 S. E., 818; *Fawcett v. Mt. Airy,* 134 N. C., 125, 45 S. E., 1029; *Storm v. Wrightsville Beach,* 189 N. C., 681, 128 S. E., 17; *Henderson v. Wilmington,* 191 N. C., 269, 132 S. E., 25.

In defining "necessary expense" it is said in *Henderson v. Wilmington, supra,* "We derive practically no aid from the cases decided in other states. . . . We must rely upon our own decisions." Then, after reviewing numerous cases dealing with the subject of "necessary expense," page 278, *Adams, J.,* said: "The cases declaring certain expenses to be necessary refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the contrary." Then, on page 279, continues: "The decisions heretofore rendered by the Court make the test of a 'necessary expense' the purpose for which the expense is to be incurred. If the purpose is the maintenance of the public peace or the administration of justice; if it partakes of a governmental nature or purports to be an exercise by the city of a portion of the State's delegated sovereignty; if, in brief, it involves a necessary governmental expense."

This Court has repeatedly held that the building, maintenance, and operation of public hospitals is not a "necessary expense."

In *Armstrong v. Comrs.,* 185 N. C., 405, 117 S. E., 388, speaking to the question of erecting a tubercular hospital for Gaston County, *Mr. Jus-*

*tice Hoke* said: "Appellants insist further that a hospital of this character should be considered a necessary expense, and so comes directly within the purview and effect of the cases cited, but we cannot so hold."

In *Nash v. Monroe,* 198 N. C., 306, 151 S. E., 634, a "residence lot and dwellings and buildings thereon" had been given to the city of Monroe for the "purpose of providing a hospital for the sick and diseased and others requiring surgical or medical attention." The city had contracted the operation of the hospital to a private physician. Then, in order to obtain certain benefits from the Duke Foundation, it was proposed that the management of the hospital should be changed, and that the city and county should buy the physician's equipment for operating the hospital. The city borrowed $5,000 and gave its note for that purpose in anticipation of collection of taxes. Speaking to the question of validity of the note and the levy of the tax, *Mr. Justice Brogden,* for the Court, said: "The maintenance of a municipal hospital is not a necessary governmental expense. . . . Moreover, 'for purposes other than necessary expenses a tax cannot be levied within or in excess of the constitutional limitation except by a vote of the people under special legislative authority.' The city of Monroe . . . undertook to pledge the faith and credit of the city in order to obtain the money. This cannot be done except in accordance with methods provided by law."

In *Burleson v. Spruce Pine,* 200 N. C., 30, 156 S. E., 241, plaintiff sought to enjoin a bond issue under the Municipal Finance Act for the purpose of "constructing, maintaining, and operating a public hospital" in the town of Spruce Pine, after the question had been submitted to and approved by the qualified voters of the town, for the reason, among others, that said bonds are not for necessary expenses within the meaning of Art. VII, sec. 7, of the Constitution. After citing the opinion in the *Armstrong case, supra, Mr. Justice Connor* stated: "In the instant case, therefore, the bonds will not be valid, unless their issuance was authorized by the General Assembly and approved by a majority of the qualified voters of the town of Spruce Pine. *Henderson v. City of Wilmington,* 191 N. C., 269, 132 S. E., 25, and cases there cited. In that case, speaking of Art. VII, sec. 7, Constitution of North Carolina, it is said: 'In analyzing and construing this section in its relation to the sixth section of Art. V, the court has held: (1) That for necessary expenses the municipal authorities may levy a tax up to the constitutional limitation without a vote of the people and without legislative permission; (2) that for necessary expenses they may exceed the constitutional limitation by legislative authority, without a vote of the people, and (3) that for purposes other than necessary expenses a tax cannot be levied either within or in excess of the constitutional limitation except by a vote of the people under special legislative authority.' This is a clear and

accurate statement of the principles of constitutional law applicable to municipal taxation in this State.

"In the instant case, the issuance of bonds and the levy and collection of the tax was approved by the people of the town of Spruce Pine—that is, by a majority of the qualified voters of said town. The bonds are, therefore, valid, if their issuance was authorized by statute duly enacted by the General Assembly."

It is significant to note that: (1) The resolution in question expresses as the purpose of the bond issue: "Constructing an addition to the county hospital, which shall be used *principally* for the care of indigent sick and afflicted poor of the county," and (2) in the contention that the present county hospital is over-crowded, only about 70 per cent of the use of the hospital in 1936 is classified as for indigent patients. "Taxes shall be levied only for public purposes." Art. V, sec. 3, North Carolina Constitution. This is a fundamental principle in the law of taxation.

In *Ketchie v. Hedrick,* 186 N. C., 392, 119 S. E., 767, the Court states: "The limitation of the Constitution is very wise. . . . It restricts taxation to necessary governmental purposes, except when a purpose outside this sphere has secured a majority of the registered voters authorizing taxation to be levied for such purpose."

Defendants rely upon the cases of *Martin v. Comrs. of Wake County,* 208 N. C., 354, 180 S. E., 777, and *Martin v. Raleigh,* 208 N. C., 369, 180 S. E., 786. These cases relate to the construction of a special act of the Legislature, authorizing the board of county commissioners in those counties to which the act is applicable to contract for provision for medical treatment and hospitalization of the sick and afflicted poor of the county. It is sufficient to note that this act does not apply to Haywood County, the defendant in the instant case. It was specifically exempted.

Judgment of the court below is

Reversed.

CONNOR, J., concurs in the decision by the Court of the question presented by this appeal for the reason that the hospital was constructed under the provisions of Art. II of Chapter 119, N. C. Code of 1935, but is of the opinion that there may be a factual situation under which the construction or maintenance of a hospital for the care and treatment of sick and indigent persons may be a necessary expense of a town, city or county for which bonds, when authorized by an act of the General Assembly of this State, may be issued by the governing body of such town, city or county, without the approval of a majority of the qualified voters of such town, city or county. See *Atkins v. Durham,*

210 N. C., 295, 186 S. E., 330. In such case the construction or maintenance of a hospital may be a necessary, governmental expense of the municipality, and bonds issued for that purpose will be valid and binding on the town, city or county. *Henderson v. Wilmington,* 191 N. C., 269, 132 S. E., 25.

In *Walker v. Faison,* 202 N. C., 694, 163 S. E., 875, the late *Justice Brogden,* speaking for this Court, said:

"The law is an expanding science, designed to march with the advancing battalions of life and progress, and to safeguard and interpret the changing needs of a commonwealth or community."

This broad and comprehensive statement of the philosophy of the law in its relation to life was approved in the opinion of *Justice Devin* in *Goswick v. Durham,* 211 N. C., 687, 191 S. E., 728.

BARNHILL, J., dissenting: The court below found that during the past two years the Haywood County Hospital has cared for indigent sick and afflicted poor of Haywood County in excess of its full normal capacity, and has not been able by reason of the crowded condition to provide for hospital care and treatment for all the indigent sick and afflicted poor of the county needing hospital treatment; that it has become necessary for the defendant county to enlarge its hospital by the building of an annex, which is contemplated to be used principally for the care of the indigent sick and afflicted poor of the county, and that the expense therefor is necessary within the meaning of the Constitution, and that there is no other hospital in Haywood County.

The plaintiff does not allege or contend that the issuance of these bonds will violate the provisions of Art. V, sec. 6, of the Constitution, nor is there any allegation of any defect or irregularity in the resolution, or in the proceedings of the commissioners authorizing the issuance and sale of the bonds. He rests his case squarely upon the question as stated in his brief: "Is the proposed building of an annex to the Haywood County Hospital principally for the care of indigent sick and afflicted poor of the county a necessary expense, or would the issuance of the bonds for that purpose and the levying of the tax for the payment of principal and interest thereof without a vote of the people be a violation of Art. VII, sec. 7, of the Constitution of North Carolina?"

That the court has the power to determine what are necessary expenses is not debatable. It is the only means through which the people of the State are assured that the governing agencies will not exceed the limitations prescribed by the Constitution.

It is too well established in this State that the State and its subdivisions are charged with the duty as a governmental function to care for the poor and to protect the health of the citizens of the State to re-

10—212

quire the citation of authorities. The counties are the governmental agencies through which these duties are to a large extent performed. A county is not in a strict legal sense a municipal corporation, it is rather an instrumentality of the State, by means of which the State performs certain of its governmental functions within its territorial limits. *Bell v. Comrs.*, 127 N. C., 85; *Jones v. Comrs.*, 137 N. C., 579. In the exercise of ordinary governmental functions they are simply agencies of the State constituted for the convenience of local administration in certain portions of the State's territory, and in the exercise of such functions they are subject to almost unlimited legislative control, except when the power is restricted by constitutional provisions.

County organizations are created almost exclusively with a view to the policy of the State at large for the purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of the means of travel and transfer, for the promotion of the health and general welfare of the people, and especially for the general administration of justice. The county organizations have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy, and they are an integral portion of the general administration of State policy.

If it is a governmental function of the State to make provision for the poor and for the protection of the health of its citizenship, then the State has the power to delegate the performance of this duty to the respective counties. The Legislature has exercised this right of delegation and has vested the counties with authority to provide for the maintenance, comfort and well-being of the poor; C. S., 1297, subsection 28, and to establish public hospitals, C. S., 1297, subsection 29; C. S., 1334 (8); ch. 81, P. L. 1927. The defendants do not have to rely upon the provisions of C. S., ch. 119.

If, then, the proposed expenditure is either a means by which the county seeks to provide for the comfort and well-being of the poor or to promote the health of its citizens, it is a necessary expense.

The opinion correctly states the rule to be followed by the court in determining what expenses are necessary, that is to say, the courts determine what class of expenditures made, or to be made, come under the definition of necessary expenses. The sole duty of the court is to classify the expense, and if it falls within a class of expenses which is governmental in its nature, or in furtherance of governmental functions, it is necessary. "Necessary expense" refers to the ordinary and usual expenditures required to enable a county to properly perform its duties as part of the State government and to exercise the functions delegated to the county by the Legislature. The words must mean such expenses as are or may be incurred in the establishing and procuring of those

things without which the peace and order of the community, its moral interests, or the health and the protection of the property of its inhabitants would suffer considerable damage, leaving out of view the matter of the great inconvenience that would be attendant upon our social life for want of such expenditures. What particular projects or means shall be adopted, or whether an expenditure shall be made in the furtherance of governmental functions rests exclusively in the sound discretion of the governing body. *Evans v. Comrs.,* 89 N. C., 154; *Brodnax v. Groom,* 64 N. C., 244.

Some of the projects approved by the court and the class within which the expense therefor falls are as follows: (1) The building and maintenance of public roads, streets, sidewalks and bridges—public convenience, intercourse, travel and commerce; (2) lighting streets and building light plants—public safety and convenience; (3) jetties—protection of property; (4) water and sewer systems, abattoirs—protection of health; (5) incinerators—sanitation.

The court reviews the ultimate purpose—not the incidental means; the primary objective—not individual projects or items. To do otherwise, and undertake to determine that a particular project is not necessary, is to invade the policy making field, which belongs exclusively to other branches of the government. The wisdom of expenditures must be left to the sound discretion of the governing agency. Speaking to this subject more than sixty years ago in *Brodnax v. Groom, supra,* Pearson, C. J., says: "Who is to decide what are the necessary expenses of a county? The county commissioners to whom are confided the trust of regulating all county matters. 'Repairing and building bridges' is a part of the necessary expense of a county as much so as keeping the roads in order, or making new roads; so the case before us is within the power of the county commissioners. How can this Court undertake to control its exercise? Can we say such a bridge does not need repairs, or that in building a new bridge near the site of an old bridge it should be erected as heretofore upon posts so as to be cheap, but warranted to last for some years, or that it is better policy to locate it a mile or so above where the banks are good abutments and to have stone pillars at a heavier outlay at the start, but such as will insure permanency and be cheaper in the long run?

"In short, this Court is not capable of controlling the exercise of power on the part of the General Assembly, or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and erecting a despotism of five men, which is opposed to the fundamental principles of our government and the uses of all times past.

PALMER *v.* HAYWOOD COUNTY.

"For the exercise of powers conferred by the Constitution the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties.

"This Court has no power and is not capable if it had the power of controlling the exercise of power conferred by the Constitution upon the legislative department of government or upon the county authorities."

It appears to me that the vice in the opinion of the Court and in the opinions contained in the cases cited in support of the position taken by the Court, to wit: The *Armstrong case, supra,* the *Nash case, supra,* and the *Burleson case, supra,* lies in the fact that the Court undertakes to determine the necessity of a particular project without relating the expenditure to the class of expense within which it properly falls. An examination of practically all the other cases bearing upon this question discloses that the Court classified the proposed expense and by so doing avoided falling into the error which I feel is attendant upon this decision.

The expense here proposed may be classified as one in furtherance of the governmental function of providing for the indigent sick and afflicted poor. The Constitution expressly provides that it is the purpose of the government to make charitable institutions as nearly self-sustaining as is consistent with the purposes of their creation. Art. XI, sec. 11.

But even if it be conceded that the language of the resolution authorizing the issuance of the proposed bonds is such as to remove the proposed expense from this class, then surely it falls within the class of expenses which are for the protection of the health of the citizens of the county. As I understand it, this is an undisputed governmental function and duty. The wisdom of such expenditure rests in the sound discretion of the board of commissioners. Our State is constantly growing in wealth and population. Our civilization is advancing with the habits and customs of necessary changes. New conditions create new necessities. What sometimes appears at the time to be an unwise and extravagant expenditure, when viewed in retrospect, is considered an evidence of sound business judgment. It is to be expected that in the changed conditions which occur in the lives of a progressive people that things at one time considered luxuries grow to be necessities. The luxuries of yesteryear are the necessities of today and the luxuries of today become the necessities of tomorrow.

In the not far distant past the State was practically without hospital facilities. Hospitals were available only to the rich, and even they considered it extravagant to make use of such facilities except in extreme cases. Today we have hospitals in practically every large town in the State, and registered nurses are located in practically every town and village. Hospitals and nursing facilities have grown to be the principal means through which the medical science is given a practical application.

If it is to be conceded that it is the duty of the government to protect the health of its citizens and to administer medical care and attention to the indigent sick and afflicted poor, then it must be conceded that the State may delegate these duties to the county, and the county has the right in the exercise of its sound discretion to perform these duties through the medium of a hospital adequate in size and equipment.

I conceive it to be the duty of the Court to interpret the law, within the limitations of the Constitution, with a view to meeting present conditions and present needs. If the decisions cited and relied upon by the Court are in conflict with and prohibit the proposed expenditures, then these decisions should be overruled and the proposed expense should be placed in the class to which it properly belongs and declared to be a necessary expense of the government in the protection of the health of the people of this county who have no other hospital facilities available to them within their county. The decisions of the Court should be mile-posts marking the progress of the law, and not hitching posts, beyond which the law may not go.

In *Fawcett v. Mt. Airy,* 134 N. C., 124, it is said: "In the effort of the courts to check extravagance and prevent corruption in the government of towns and cities, the judicial branch of the government has probably stood by former decisions from too conservative a standpoint, and thereby obstructed the advance of business ideas which would be most beneficial if put into operation; and this conservatism of the courts, outgrown by the march of progress, sometimes appears at a serious disadvantage."

The Constitution protects the people even against unduly restrictive action of the courts. The Court enforces its protective provisions as against the other branches of the government, and must likewise do so as to its own interpretation and application of the law.

The law as now declared by the Court is such that it is lawful to incur an expense in building jetties in the sea to protect the property of summer cottagers on the seashore, but prohibits the construction of a hospital intended primarily to minister to the indigent sick and the afflicted poor—playgrounds and public parks to preserve the health of the well-to-do are necessary, while a hospital, with its attendant nursing facilities, to restore to health those who are sick, is not. This, to my mind, creates an inconsistency that operates to the disadvantage of those who are most in need of the ministering care of a progressive democratic government committed to Christian principles, and it ought not to be.

I am authorized to say that MR. JUSTICE CLARKSON concurs in this dissent.