JASPER COUNTY FARM BUREAU v. JASPER COUNTY, Appellant.

Division One, July 30, 1926.

**1. FARM BUREAU ACT: Appropriations by County: Constitutional.** The Farm Bureau Act (Secs. 12135 to 12142, R. S. 1919), providing that the county court may appropriate county funds for the use of a farm bureau composed of not less than two hundred and fifty resident farm-owners who pay an annual membership fee of not less than one dollar each, organized for the purpose of "promoting the public welfare by assisting in the general betterment of farm and home practices and conditions" and having among its objects the promotion of "the development of profitable and permanent systems of agriculture" and the encouragement of "the development and successful growth of all rural, social and educational institutions," is a constitutional law, and does not violate Section 46 or Section 47 of Article 4, or Section 6 of Article 9, of the Constitution.

**2. ———: ———: Gifts: Public Purpose: Public Institution.** The fact that the primary purpose of the Farm Bureau Act (Laws 1919, p. 112) is to promote agriculture by an appropriation of public funds does not render it unconstitutional, for such purpose is nevertheless a public purpose, and its chief function is to promote the public good. The appropriations are not gifts or grants of public money to a private association or society, but appropriations in payment of expenditures incurred in carrying out the work of a public county institution, and that the bureau is a public institution is shown by the fact that the act requires the bureau to make monthly and annual reports to the county court.

---

Corpus Juris-Cyc. References: **Agriculture,** 2 C. J., Section 7, p. 990, n. 34; p. 991, n. 35. **Counties,** 15 C. J., Section 290, p. 587, n. 31; p. 588, n. 34, 40 New. **Evidence,** 23 C. J., Section 1815, n. 64, n. 3 New.

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson,* Judge.

AFFIRMED.

*Roy Coyne* and *Frank L. Forlow* for appellant.

(1)   When county taxes are collected and the money is paid in the county treasury it becomes public money, within the meaning of the Constitution.   State ex rel. v. County Court, 142 Mo. 575; Cavanaugh v. Gordon, 244 Mo. 695, 698.   (2)   The General Assembly had no power to pass the act creating farm bureaus and granting authority to the county courts to take public moneys and pay them to such an association.   Such act is void and unconstitutional, and every dollar of the public moneys appropriated by the court for such purpose under said act is illegal and without authority.   Secs. 46 and 47, Art. 4, Mo. Constitution; State ex rel. v. St. Louis, 216 Mo. 69; State ex rel. v. St. Louis, 241 Mo. 231.   The act is also in conflict with the Constitution declaring that taxes may be levied and collected for public purposes only.   Deal v. Mississippi County, 107 Mo. 464; State ex rel. Board of Control v. St. Louis, 216 Mo. 47; State ex rel. v. St. Louis, 241 Mo. 231; State ex rel. Kansas City v. Orear, 277 Mo. 303.   (3)   Where the gift, grant, donation or appropriation is made to an individual, association or corporation not being a part of, owned or controlled by the municipality making the same, and the expenditure of the money not being under the supervision or control of the municipality or its officers, or where it is a mere gratuity, not for a governmental function; in all such cases such gift, grant, donation or appropriation and the law authorizing it are unconstitutional and void.   State ex rel. v. County Court, 142 Mo. 575; State ex rel. v. Ziegenhein, 144 Mo. 283; Deal v. Mississippi County, 107 Mo. 464; State ex rel. Prairie Twp. v. Walker, 85 Mo. 41; Cavanaugh v. Gordon, 244 Mo. 695; State ex rel. v. Kimmel, 256 Mo. 611; State ex rel. v. St. Louis, 216 Mo. 47; State ex rel. v. Distilling Co., 237 Mo. 106; Lamar Twp. v. City of Lamar, 261 Mo. 182.

*McReynolds, McReynolds & Flanigan* for respondent.

The Farm Bureau Act is constitutional.   State v. Hackmann, 205 S. W. 161; State ex rel. v. Hackmann, 293 Mo. 313; State ex rel. v. Seibert, 123 Mo. 424; State v. Taylor, 224 Mo. 468; City of Hannibal v. Marion County, 69 Mo. 571; State v. St. Louis County, 34 Mo. 546; State v. St. Louis, 174 Mo. 125; State ex rel. v. Chariton Drainage District, 252 Mo. 345; Carman v. Hickman County, 215 S. W. (Ky.) 408; Hendrickson v. Farm Bureau, 244 S. W. (Ky.) 82; State v. Miller, 178 N. W. (Neb.) 846; Furnas County Farm Bureau v.

Brown, 200 N. W. (Neb.) 451; Nemaha Fair Assn. v. Myers, 44 Kan. 132, 24 Pac. 71; State ex rel. v. Meeker, 105 N. E. (Ind.) 906; State v. Ritchie County Court, 133 S. E. (W. Va.) 652; Westlake v. Anderson, 156 N. W. (N. Dak.) 925; Bevis v. Wright, 175 Pac. (Ida.) 815; Foster v. Commissioners of Cowlitz County, 171 Pac. (Wash.) 509; Neal v. Boog-Scott, 247 S. W. (Tex.) 689; 2 C. J. 989, 990; Norcross v. Cole, 187 Pac. (Nev.) 877; Comer v. State, 110 N. E. 984; Exposition Driving Park v. Kansas City, 174 Mo. 434.

OTTO, J.—This is a proceeding instituted in the Circuit Court of Jasper County by the Jasper County Farm Bureau, a voluntary association, organized pursuant to the provisions of an act of the Legislature found in the 1919 Session Laws at page 112, and now found in Revised Statutes 1919 as Sections 12135 to 12142, inclusive, which creates county farm bureaus, and *inter alia* provides that the county courts may appropriate funds to the use of such farm bureaus, to recover of the county the unpaid balance of an appropriation made by the county court for the use of the Jasper County Farm Bureau for the years 1922 and 1923. The appellant answered averring that the Farm Bureau Act was in conflict with the provisions of Section 46 of Article IV and of Section 47 of Article IV and of Section 6 of Article IX of the Constitution of Missouri, and, therefore, unconstitutional and void.

The trial court found the act to be constitutional and gave judgment for plaintiff as prayed. From which judgment the defendant appealed.

The act providing for county farm bureaus defines a county farm bureau as "a county organization formed for the purpose of co-operating with the University of Missouri college of agriculture in carrying out the provisions of the Smith-Lever Act of Congress approved May 8, 1914, composed of not less than 250 bona-fide farm-owners or residents with an annual membership fee of not less than one dollar per member fully paid up, its constitution and by-laws formally adopted and its officers elected and installed." It is provided in the act itself that the purpose of such organization shall be that of "promoting the public welfare by assisting in the general betterment of farm and home practices and conditions, and must have for its objects:

"(a) To promote the development of profitable and permanent systems of agriculture.

"(b) To assist in securing wholesome and satisfactory living conditions in the country.

"(c) To encourage the development and successful growth of all rural, social and educational institutions.

"(d)   To assist in safeguarding rural public health through community cooperation.

"(e)   To develop better economic and business methods and practices in farm and home life.

"(f)   To cooperate with all individuals, groups, institutions and organizations whose purposes are in accord with the objects set forth in this section."

The act further provides that whenever a county farm bureau has been organized with the required number of members, with its membership dues fully paid up, its constitution and by-laws adopted, and its officers elected and installed, the county court shall be empowered and authorized to appropriate out of the general funds of the county such sums as the court may deem proper for the support of such organization.

It is here urged that the Farm Bureau Act above referred to is constitutional for the reason that said act is in conflict with the provisions of Section 46 of Article IV, Section 47 of Article IV and Section 6 of Article IX of the Constitution of Missouri, and therefore unconstitutional and void.   The portions of the sections of the Constitution above enumerated, which appellant insists are violated, which are relevant here, are as follows:

Sec. 46, Art. IV: "The General Assembly shall have no power to make any grant, or to authorize the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation whatsoever."

Sec. 47, Art. IV: "The General Assembly shall have no power to authorize any county, city, town or township, or other political corporation or subdivision of the State now existing, or that may be hereafter established, to lend its credit, or to grant public money or thing of value in aid of or to any individual, association or corporation whatsoever."

Sec. 6, Art. IX: "No county, township, city or other municipality shall hereafter become a subscriber to the capital stock of any railroad or other corporation or association, or make appropriation or donation, or loan its credit to or in aid of any such corporation or association, or to or in aid of any college or institution of learning or other institution, whether created for or to be controlled by the State or others."

In support of these objections the argument is made that the farm bureau legislation above referred to was enacted solely for the benefit of the farmers and agricultural interests of the State, and, this being so, was an attempt on the part of the Legislature to set apart this class of people and this industry, and appropriate for their and its benefit money raised by taxation, and therefore the purpose for which the appropriation was authorized was not a public one.

What is for the public good and what are public purposes and what does properly constitute a public burden are matters which are very often difficult to define with accuracy. In determining the nature of the object of an appropriation, as to whether public or private, a study of pre-existing conditions and a consideration of the mischief to be remedied by the enactment of the constitutional provisions lend great aid in their proper understanding. "It is common knowledge that counties, townships and cities in this State and elsewhere were at one time induced to vote bond issues in large amounts in aid of much-desired railroad construction, some of which was never built, and that such issues frequently involved such counties, townships and cities in a hopeless burden of debt. It was to end such profligacy that the provisions of Section 6 of Article IX, Section 46 of Article IV and Section 47 of Article IV were placed in the Constitution of 1875. The Constitution of 1865, Section 14, Article XI, prohibited the General Assembly from authorizing any county, city or town to become a stockholder in or loan its credit to any corporation without the assent of two-thirds of the qualified voters at an election at which such proposition should be submitted. Bitter experience resulted in the absolute prohibition of such financial assistance in the Constitution of 1875."

The purpose of the Farm Bureau Act and the appropriation of public funds authorized by it is in no wise similar to the loans of public credit at which the above-mentioned constitutional provisions were leveled.

It may readily be conceded that the primary purpose of the act in question was to promote the agricultural interests of the State for the act itself provides: "For the purpose of promoting the public welfare by assisting in the general betterment of farm and home practices and conditions, the county court of any county is hereby authorized and empowered to appropriate out of the general funds of the county such sums as it may deem proper for the support of a county farm bureau." [Sec. 12135, R. S. 1919.] The fact that the act appropriates public funds to promote the agricultural interests of the State does not render it objectionable to the sections of the Constitution invoked and quoted above, as we will later endeavor to show. There is, of course, no difficulty in ruling that public funds cannot be appropriated for other than public purposes. About this there can be no dispute, and therefore, when a controversy such as comes up in this case arises, the only question to be considered is whether the purpose for which the money is to be appropriated is a public one within the meaning of the constitutional provisions.

It is also true that many objects for which money may be appropriated are so clearly public in their nature that there could not well be any difference of opinion on the subject, such, for example, as

public charities, and appropriations providing for the care of the indigent, destitute and insane, either in institutions exclusively under state control or those maintained by corporations for purely charitable purposes. In 1894 this court, in Banc, in the case of State ex rel. City of St. Louis v. Seibert, 123 Mo. 424, held that an appropriation for the support of the indigent insane in the asylum of the city of St. Louis who belonged to the State outside of the city, was not unconstitutional even though such insane asylum was a private institution of such city and was not one of the state eleemosynary institutions. So also public funds appropriated for the state and county system of schools. Likewise the expending of public funds in the construction of necessary public buildings and the construction and maintenance of public roads. On the other hand, there are many other enterprises helpful to the public in the community in which they are located, and that contribute very largely to the development and progress of the State, that are so purely private in their nature as not to admit of any doubt about the matter. Such, for example, are manufacturing or commercial enterprises established and maintained by private individuals or corporations for purely private gain.

There are also many purposes for which public money may be appropriated from the use of which some persons derive more benefit than others, but this circumstance does not detract from the fact that their chief function is to administer to the public good, although the enjoyment and advantages derived from their maintenance are not distributed equally, even between members of the public who are situated alike or in the same class. If it were essential to the establishment or existence of an enterprise to be set up and sustained by public aid that all members of the public or all members of any class should derive from it the same or like benefits or advantages, then it would be entirely impossible to describe a public enterprise in aid of which public funds might be set apart.

The truth of this statement is so obvious that no elaboration is needed. It is seen in the operation and conduct of all those uses that are so distinctly public in their nature as to leave no room for doubt as to their public character. There is no public institution, public road, public bridge, public hospital or public park from which some persons do not derive more benefit than others. It is not, however, necessary that the whole body of the contributing public shall be directly benefited or receive the advantages accruing from the establishment of the object in aid of which public funds may be set apart. It will be sufficient if it should be of such a character as that it promotes the general welfare and prosperity of the people who are taxed to sustain it.

In State ex rel. Boonville v. Hackmann, 293 Mo. l. c. 320, public funds were appropriated for the construction of an approach to a private toll bridge. This court in that case said: ''The fact that the private corporation owning the bridge will incidently be benefited by the improvement, is no more reason for denying the authority of the relator to issue bonds than would the fact that the owner of a lot abutting any street improved by public money profits similarly by such improvement. In either case the benefit to the general public renders insignificant the incidental benefits accruing to the private interests.''

Measured by the standards outlined above, we have no doubt that public funds may be set apart to develop and promote the general agricultural interests of the State by the creation of farm bureaus, for it is a matter of common knowledge that in the agricultural interests of the State lie its chief source of wealth, and that the prosperity of the State springing from this source contributes to the growth and importance of every other industry in the State, as well as to the comfort and happiness of the whole people; and it is in recognition of this indispensable and thoroughly known fact that appropriations made to foster, encourage and stimulate the agricultural interest of the State have always been regarded as made for a public purpose.

In determining whether an appropriation in aid of the agricultural interests of the State is for a public purpose within the meaning of the Constitution, the public policy of the State as has found expression in legislative enactments setting apart public funds for the purpose of promoting the agricultural interests of the State is entitled to weighty consideration. In discussing this point this court in the case of Halbruegger v. City of St. Louis, 302 Mo. 573, said: ''There is no dissent from the doctrine that to justify judicial interference to defeat an adopted purpose on the single ground that it is not a public purpose, the violation of the principle must be clear and the reason for interference strong. As has been observed by courts and text-writers, there are instances in which there can be no reasonable doubt that the purpose attempted to be effectuated is not a public purpose. There are others in which it is clear that the purpose is public. Between these two cases lies disputed ground within which the courts are inclined to give much consideration to the effect of the legislative finding which is essentially involved in every legislative declaration that public money may be used for a stated purpose.''

The State, by the creation of farm bureaus, has undertaken nothing new. Our Legislature has recognized similar societies as being of a purely public nature for almost fifty years, by authorizing appropriations of public funds in support of county agricultural

societies. In 1879 the Legislature enacted an act authorizing the formation of county agricultural and mechanical societies for the promotion of the "agricultural, manufacturing and stock-raising interests of the State," and empowered the county courts of this State to appropriate public funds for the support of such associations. Since the enactment of this act it has been the continued policy of the State to appropriate public funds for the support of such societies, and such societies have always been recognized as societies for the advancement of agriculture in this State. This court has likewise recognized these societies. In Exposition Driving Park v. Kansas City, 174 Mo. l. c. 435, this court said, in discussing the purpose of such societies and associations: "These agricultural societies, both state and county, had been favored objects of the State's bounty for many years. Every revision, commencing with 1855 down to the present, contains the law authorizing their formation and government. The purpose of their creation was not private gain, but the encouragement of agriculture and horticulture."

Nor are the appropriations provided for under the Farm Bureau Act gifts or grants of public money to private associations or socities but are rather appropriations in payment for expenditures in carrying out the work of a public county institution. It is true the institution is in the form of a society or association, but the society or association is a public county institution, for. the Farm Bureau Act makes it such by providing that the association or society make monthly and annual reports to the county court. [Secs. 12139, 12141, R. S. 1919.]

In State ex rel. v. Chariton Drainage District, 252 Mo. 345, this court in passing on a similar point held: "Was the use to which the appropriation was to be put a public or a private use? If public it was not in conflict with the Constitution, even though the corporation to which it was appropriated was only a *quasi*-public corporation."

In 2 Corpus Juris 90, the following language is found: "Under some of the statutes, agricultural societies upon compliance with certain conditions, are entitled to receive appropriations from the public treasury for their support and advancement; and the acts authorizing appropriations of public money in their behalf are not unconstitutional, although. such appropriations to private corporations are forbidden."

The Missouri Farm Bureau Act was passed by the Legislature in acceptance of the Federal aid tendered by the Act of Congress of May 8, 1914, Chapter 79, 38 Statutes 372-374, Barnes' Federal Code 1919, Sections 8413-8420, commonly referred to as the Smith-Lever Act. Since the passage of the Smith-Lever Act, supra, practically every State in the Union has accepted the provisions of the act by

authorizing the creation of County Farm Bureaus. In other states the constitutionality of these acts has been assailed, the same constitutional objections having been raised as in the case at hand.

Thus, in Furnas County Farm Bureau v. Brown, 200 N. W. (Neb.) 451, the constitutionality of the Nebraska act was considered and upheld. Likewise in Kentucky in the cases of Hendrickson v. Taylor County Farm Bureau, 244 S. W. 82, and Carman v. Hickman County, 215 S. W. 408, the constitutionality of the Kentucky act was upheld. Also in Indiana, in State ex rel. Simpson v. Meeker, 105 N. E. 906; in Utah, in the case of Bailey v. Van Dyke, 240 Pac. 454; in Nevada, Norcross v. Cole, 44 Nev. 88; in West Virginia, in the cases of Hutchinson v. Braxton County Court, 130 S. E. 654, and State v. Ritchie County Court, 113 S. E. 652, the constitutionality of the Farm Bureau acts of these respective states was upheld. While the foregoing decisions are not binding on this court, they are nevertheless persuasive for similar constitutional provisions were considered.

For the reasons outlined above we hold that the sums authorized to be appropriated by the various counties by reason of the Farm Bureau Act are not an appropriation of public funds for a private use and, therefore, not in conflict with the constitutional provisions as here contended by the appellant. The judgment of the lower court is therefore affirmed. It is so ordered. All concur, except *Graves, J.,* absent.