Henry P. RUGGERI, Jr., d/b/a Ruggeri's, Pope's Cafeterias, Inc., a Corporation, Collins Enterprises, Inc., a Corporation, Steak N Shake, Inc., a Corporation, White Castle System, Inc., a Corporation, St. Louis National Stockyards Co., a Corporation, Louis Lazzi, d/b/a Rigazzi's, Miss Hulling's Cafeteria, Inc., a Corporation, Tony's, Inc., a Corporation, Maryland Cafeteria, Inc., a Corporation, Forum Cafeterias of America, Inc., a Corporation, Leon Burrow, d/b/a Courtesy Sandwich Shop, Respondents,

v.

The CITY OF ST. LOUIS, a Municipal Corporation, Joseph T. Hayden, License Collector of the City of St. Louis, and John H. Poelker, Comptroller of the City of St. Louis, Appellants.

No. 53489.

Supreme Court of Missouri, Division No. 1.

July 8, 1968.

Charles S. Sigoloff, J. E. Sigoloff, St. Louis, for plaintiffs-respondents.

Gary M. Gaertner, City Counselor, Aubrey B. Hamilton, Assoc. City Counselor, St. Louis, for defendants-appellants.

HIGGINS, Commissioner.

Class action by restaurant operators for declaratory judgment and injunctive relief. Upon their motion, summary judgment was entered declaring Ordinance 54737 of the City of St. Louis unconstitutional, null and void, and enjoining its enforcement by appellants.

■ Respondents have moved to dismiss this appeal on the theory that a subsequent ordinance repealed Ordinance 54737 and rendered all issues moot; however, the subsequent ordinance provides for continued exposure to the taxes levied under the ordinance in question and the suggestion that the appeal should be dismissed is rejected in favor of a determination of the cause on its merits. State v. Local 8-6, Oil, Chemical and Automic Workers, Mo., 317 S.W.2d 309, 314 [2, 3].

Sections Two and Three of Ordinance 54737 enacted new Sections 696.367(a) and 472.030(a) to the Revised Code of the City of St. Louis, to impose a tax of one percent of daily gross receipts due from or paid by patrons of all hotels, motels, and restaurants doing business in St. Louis. This tax was in addition to any existing taxes or license fees otherwise levied upon hotels, motels, and restaurants.

Section One of the ordinance established "the Convention and Tourism Bureau of the City of St. Louis," consisting of the Mayor, Comptroller, and President of the Board of Aldermen, and "authorized and directed" the Bureau to enter into agreements and contracts from time to time with "the Convention and Tourist Board of Greater St. Louis": (1) to aid and assist the Bureau in adoption of plans, policies and programs for fostering and development of St. Louis as a convention and tourist center; (2) to aid and assist the Bureau in performance of its duties and obligations under the ordinance; (3) to engage in promotions of the advantages of St. Louis as a vacation, tourism, and convention city; (4) to work with other agencies, bureaus, boards and associations to promote economic, social, industrial, cultural and commercial growth of St. Louis by encouraging nonresidents and residents to visit and participate in cultural, educational, historical, athletic, amusement and other activities and facilities, places and establishments in St. Louis; (5) to foster and encourage use of Kiel Auditorium and other convention facilities in St. Louis for conventions; (6) to promote St. Louis as a convention and tourist center.

Section One also established the "Convention and Tourism Fund of the City of St. Louis," and provided that "all taxes levied and collected and appropriated pursuant to this ordinance shall be deposited to the credit of such fund, * * * (and) shall be used and expended by the Convention and Tourist Board of Greater St. Louis for the purposes set forth in this Section pursuant to the agreements and contracts entered into between the Bureau and the Board * * *."

Sections Two and Three also provided that two thirds of the taxes levied on hotels and motels, and all taxes levied on restaurants after deducting the first $50,000 in gross receipts "shall be deposited into * * * the Convention and Tourism Fund." The Fund was to receive also a semiannual appropriation from the city to match the

taxes collected from hotels, motels and restaurants under this ordinance limited to $250,000.

The Convention and Tourist Board of Greater St. Louis is a *pro forma* decree corporation organized July 25, 1910, under Chapter 12, RSMo 1899, "Benevolent, Religious, Scientific, Fraternal-Beneficial, Educational and Miscellaneous Associations." The Articles of Agreement of the association state its purpose: "to invite conventions and other quasi public gatherings to hold their meetings in the City of St. Louis, so that its citizens may be educated and intellectually benefitted upon all matters and things appertaining to education, history, science and literature, or whatever is incidental to or promotive of such subjects. Further, to encourage the printing and circulation of all papers read and debated at such meetings on educational and scientific subjects, which tends or conduces to the public advantage in relation to any or several to the subjects above enumerated. * * * Any individual, firm or corporation interested in promoting education and the intellectual development of the citizens of the City of St. Louis, shall be eligible to membership. * * * To meet the expenses * * * membership certificates will be issued, for each of which there shall be an annual payment of twenty-five dollars ($25.00). Any individual, firm or corporation may subscribe for as many certificates of membership as desired, * * *."

Under Ordinance 54737, "the members of the Bureau (Mayor, Comptroller, and President of the Board of Aldermen) shall as a condition precedent to the entering of any agreement or contract with the Board, be named as a member of the Board of Directors and the Executive Committee of such Board."

Respondent restaurant operators charged that Ordinance 54737 in amending Chapter 472 of the Revised Code of the City of St. Louis and enacting new Section 472.030 (a) was illegal, unconstitutional, arbitrary, confiscatory, vague, and void in violation of Amendments V and XIV, Constitution of the United States; Section 10 of Article I, Section 23 of Article III, Sections 19, 23, 25, and 31 of Article VI, Sections 1 and 3 of Article X, Constitution of Missouri; Sections 71.610, 144.460, 144.470, and 432.-070, V.A.M.S.; Sections 1(1) and 1(4) of Article 1, Section 13 of Article 4, and Sections 2, 3, 4, 5, and 7 of Article 16 of the Charter of the City of St. Louis. Among the reasons for the alleged violations of constitutions and statutes were: that the ordinance unlawfully purports to levy a tax and appropriate general revenue to create a Convention and Tourism Fund "to be turned over to a private organization, not managed or controlled by the City of St. Louis, nor by its Officers, and not amenable to its control, to be used and expended in its sole discretion"; that the ordinance in directing the Convention and Tourism Bureau to contract with the Convention and Tourist Board of Greater St. Louis for expenditure and disbursement of the public fund is void because the city has no such constitutional, statutory, or charter authority; that the ordinance illegally delegates legislative functions to the Bureau by directing it to contract with the Board for the purposes of the ordinance; that in the illegal delegation of legislative functions of the Bureau in the direction to contract with the Board for expenditure of the Fund, an uncontrolled and illegal right to expend and disburse public funds is given to a private organization.

The trial court found the ordinance unconstitutional, invalid and void for the reason that the provision for the Convention and Tourist Board, a private agency, to expend all money placed in the Convention and Tourism Fund by the ordinance, was an appropriation of public money to a private agency in violation of Section 25, Article VI, Constitution of Missouri, providing that no city shall grant public money to any private individual, association, or corporation.

Disposition of this appeal is governed by State ex rel. Board of Control of St. Louis School and Museum of Fine Arts v. City of St. Louis, 216 Mo. 47, 115 S.W. 534. In that case the Board of Control of the St. Louis School and Museum petitioned for a writ of mandamus to compel St. Louis to pay to it $85,000 then in the city treasury as the proceeds of a one-fifth mill tax levied and collected for an art museum. The tax was levied for expenditure by the Board of Control by an ordinance adopted pursuant to a legislative act of March 7, 1907. The act provided that a city of 400,000 or more inhabitants could vote an annual tax of one fifth of a mill for establishment, maintenance, and extension of a museum of art for the benefit of the public. If the tax was voted, the legislative branch of the city was empowered to appoint an administrative board of nine members to control expenditure of the art museum fund, "Unless and except there shall be at the time already constituted and in existence, operation and authority an administrative board endowed by city ordinance or other legal authority with power to occupy or administer public property devoted by law to the uses of an art museum * * *; and if there be such a board, such board and its successors shall be the Board of Control for the art museum fund under this act for all the purposes and possessing all the powers and charged with all the duties provided for such board in this act." 115 S.W. l.c. 544. The Board of Control, a division of Washington University, contended that under the act it was the existing legal agency to receive and expend the tax. The quoted proviso of the act was held unconstitutional and the Board of Control was ruled not entitled to the fund because the act "was an attempt to require the city of St. Louis and its taxpayers to donate this art museum tax to the support of a department of Washington University, a private corporation, and * * * to that extent the act was clearly within the prohibitions of the Constitution * * * and therefore void." 115 S.W. l.c. 548. The constitutional references

were to what are now Section 3, Article X, and Section 25, Article VI, of the Constitution of Missouri, and "it was their purpose that taxes should only be levied for public purposes, and when collected should be administered and disbursed only by public officers elected or appointed according to law, and that their accounts should from time to time be investigated by the lawful authorities, and that municipal corporations were only authorized to levy and collect taxes for municipal purposes, and municipal enterprises should be conducted and controlled in fact by such municipalities by and through their proper officers, and were not authorized to exact taxes and turn them over to any private individual or board of any private corporation to disburse at their discretion." 115 S.W. l.c. 546.

The same statute as in the foregoing case gave rise to further definition of that case in State ex rel. Bixby v. City of St. Louis, 241 Mo. 231, 145 S.W. 801: "A proposition decided in that case was that the Board of Control of the St. Louis School and Museum of Fine Arts was not in fact, and could not become * * * a public municipal institution, but was a mere department or administrative agency of Washington University, a corporation chartered by the state * * *, (it) was not, and could not become, a public official body of the city of St. Louis amenable to municipal government. * * * (It) could not, under pointed-out provisions of our Constitution, be entitled to a donation of taxes levied and collected for public purposes * * *." 145 S.W. 805.

■ There is no question that the Convention and Tourist Board of Greater St. Louis is a nonprofit association created for benevolent purposes by *pro forma* decree of incorporation. Its creation, status, and purposes do not in any way relate or connect with the municipal government of the City of St. Louis or any of its divisions. Irrespective of its worthwhile purposes and

activities, and while its objects may be in a certain sense public, such a corporation, as distinguished from uses or objects, is private. State ex rel. Board of Control v. City of St. Louis, supra, 115 S.W. l.c. 545. In Ketchie v. Hedrick, 186 N.C. 392, 119 S.E. 767, 31 A.L.R. 491, 494, an ordinance authorized payment of public funds to a chamber of commerce to be expended by it for purposes of bringing industry to High Point. In declaring the ordinance unconstitutional, the rationale for denying nongovernmental bodies the authority to receive and expend public funds was expressed: "We know of no reason why the expenses and purposes of a nongovernmental body like a chamber of commerce should become necessary expenses of government. * * * they are actuated by patriotic motives to advance the public good. But they are in no sense governmental. They are neither elected nor appointed by public authority. They exercise no governmental duty. * * * If chambers of commerce * * * can be termed governmental simply because they claim to be advancing the public welfare from their standpoint, and taxation can be levied upon the entire community to advance the ideas that 'in their discretion' they deem for the public welfare, we know of no reason why the entire public shall not in like manner be taxed for the benefit of (clubs), who, also, as well as the Chambers of Commerce, are composed of many of our best citizens and who in the same manner are actuated by patriotic motives to advance the public welfare." 119 S.E. l.c. 768–769. See also Horner v. Chamber of Commerce, 235 N.C. 77, 68 S.E.2d 660, where a taxpayer secured a declaration of invalidity of an ordinance and caused restoration of tax funds levied by a city and delivered outright to a chamber of commerce for "publicity" by the ordinance in question.

Under such authorities the Convention and Tourist Board of Greater St. Louis is not an agency of the municipal government of the City of St. Louis. It cannot, therefore, be delegated as the agency to receive and disburse public tax money of that city, and provisions for a tax fund which might otherwise be valid are nevertheless unconstitutional when such fund is directed to be administered by a private nongovernmental body.

It is true, as argued by appellants, that a municipality may enter into an exclusive contract with a hospital for care of its insane, St. Louis Hospital Association v. City of St. Louis, 15 Mo. 592, and there are many other instances in which municipalities may contract for services subject to lawful restrictions. It has been held that a city may create a fund from taxation for advertising the city and contract with an agency for such service, City of Jacksonville v. Oldham, 112 Fla. 502, 150 So. 619, Miller v. Michigan State Apple Comm., 296 Mich. 248, 296 N.W. 245; that a city may grant exclusive rights to a private corporation to transport passengers to a public airport, Miami Beach Airline Service v. Crandon, Fla., 32 So.2d 153, 172 A.L.R. 1425; and that under applicable enabling statute a county court may contribute funds to a county farm bureau for certain expenses. Jasper Co. Farm Bureau v. Jasper County, 315 Mo. 560, 286 S.W. 381. However, in none of those cases was there an ordinance or statute which levied a tax to create a specific public fund and direct such fund to be contracted away to a private agency for administration and disbursement as in Ordinance 54737.

Appellants attempt to distinguish the effect of Ordinance 54737 from the rule of State ex rel. Board of Control v. City of St. Louis and State ex rel. Bixby v. St. Louis, supra, on the theory that the Convention and Tourist Board does not levy the tax but simply assumes obligations under a contract with the city, and that it "will not receive a donation of tax monies but will only receive such compensation as may be reasonable in exchange for the promotional services that it renders to the City."

It already has been demonstrated that the Board is a *pro forma* decree nonprofit cor-

poration and that, even with its power to contract, it is not a governmental agency for purposes of administering a tax fund which, under previously quoted provisions of the ordinance, is to be administered and expended by the Board. Nowhere is there any provision for receipt of only such compensation as the Board may earn for services rendered.

■ Appellants also argue that the expenditure of tax money is not left "to the unfettered control of a non-public body," as suggested by the trial court, because the Bureau would not enter into an unconscionable contract with the Board or one for other-than-promotional purposes and the $250,000 ceiling and presence of the Mayor, President of the Board of Aldermen, and Comptroller are all restrictions and standards limiting such unfettered control.

The only reasonable interpretation of the offending ordinance provision is that the Bureau was directed to enter into a contract with the Board to the end that the Board would become the agency to expend the entire Convention and Tourism Fund. Such a contract would, no doubt, provide for such expenditure to be for advertising and promoting the city as a convention site but, nevertheless, the Fund would be paid directly to the Board under the ordinance. The vice in the ordinance is that the whole fund is to be used and expended by the Board. Under such a direction the Bureau is required to enter into a contract which enables the Board to make use of the entire Fund and the control of the Fund is thus delegated to the Board, a private agency. The ordinance does not give the Mayor, Comptroller, and President of the Board any municipal authority over the Fund. They constitute a Bureau which is but a conduit through which the Board is given control of the Fund.

■ Nor does placing the members of the Bureau, the Mayor, the Comptroller, and the President of the Board, on the board of directors and executive committee of the Board and directing reports to be filed with the city make the Board any more a public or governmental agency. When those city officers take such places in the private agency they simply exercise, in common with other officers of that agency, the powers that such agency has and nothing more. State ex rel. Board of Control v. City of St. Louis, supra, 115 S.W. l.c. 542–543. The semiannual report of expenditures to the city under the delegation of authority to the Board becomes advisory only because the ordinance has already directed the Board to receive and expend all the Fund and there is no provision for return of any unused funds.

Appellants imply that State ex rel. Bixby v. City of St. Louis, supra, modified the holding in State ex rel. Board of Control v. City of St. Louis, supra. In the later case, it was determined that after elimination of the private agency by holding the proviso for it unconstitutional, there remained a constitutional provision for appointment of a public administrative agency (a 9-man board) which would be truly a governmental agency subject to control of the officers of the city. Such an alternative or saving provision is lacking in Ordinance 54737, and no support for the ordinance can be gained from the case. To the contrary, that case reiterates and gives greater weight to the earlier case.

As suggested by the trial court, the Convention and Tourist Board of Greater St. Louis is, no doubt, a deserving organization, capable of and rendering beneficial services in the field for which it was formed. It may be that the City of St. Louis, through its official government, may provide a tax-supported scheme for advertising and promoting the city as a convention site and tourist attraction which shall be under the control and direction of the city government. However, for the reasons stated, the Convention and Tourism Fund, derived from additional taxes under Ordinance 54737, is an appropriation of public money to the use of a private agency and, to that extent, it violates the Constitution of Mis-

souri. State ex rel. Board of Control v. City of St. Louis, supra, 115 S.W. l.c. 549.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.