

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| LAURA SALAMUN, ET AL., | ) | *Opinion issued June 25, 2024* |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. SC100076 |
| | ) | |
| THE CAMDEN COUNTY CLERK, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

and

| | | |
|---|---|---|
| GAIL GRISWOLD, ET AL., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. SC100083 |
| | ) | |
| MILLER COUNTY, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY
**The Honorable Deborah Daniels, Judge**

### APPEAL FROM THE CIRCUIT COURT OF MILLER COUNTY
**The Honorable Deborah Daniels, Judge**

Gail Griswold; Shawnee Bluff Winery, LLC; Laura Salamun; and Pointe View Management, LLC (collectively, "Challengers")[1] appeal judgments declaring section 67.1175.1[2] constitutionally invalid because that provision, read with section 67.1177, requires a political subdivision to grant public money to a private entity in violation of article VI, section 23 of the Missouri Constitution. The circuit court modified section 67.1175.1 in an attempt to cure the constitutional invalidity. On appeal, Challengers claim the circuit court erred in modifying section 67.1175.1 because, despite the modification, sections 67.1175 and 67.1177 continue to require a political subdivision to grant public money to a private entity in violation of the constitution. Challengers further argue the entire statutory scheme—sections 67.1170, 67.1175, 67.1177, and 67.1180— must be struck because sections 67.1175 and 67.1177 are not severable.

This Court finds the circuit court erred in modifying section 67.1175.1 because that section, as modified, and section 67.1177, on their faces, continue to require political subdivisions to grant public money to a private entity in violation of article VI, section 23 of the Missouri Constitution. Further, this Court concludes the void provisions are not severable from the remaining provisions of the statutory scheme—sections 67.1170 and 67.1180. Accordingly, the entire statutory scheme must be struck as constitutionally invalid. The circuit court's judgment is reversed. Pursuant to Rule 84.14, this Court

---

[1] As explained below, initially, Griswold and Shawnee Bluff Winery filed suit. Salamun and Pointe View Management then filed a nearly identical suit. The two cases proceeded simultaneously before the same judge. Challengers filed separate appeals and briefs in this Court. This Court issues a single opinion because the legal issues are the same in each case.

[2] All statutory citations are to RSMo 2016, unless otherwise noted.

enters the judgment the circuit court should have entered and declares sections 67.1170, 67.1175, 67.1177, and 67.1180 constitutionally invalid and void in their entireties.[3]

## Background

The legislature enacted, in 1993, a statutory scheme—sections 67.1170, 67.1175, 67.1177, and 67.1180—governing the creation, operation, and dissolution of taxing districts known as lake area business districts. Specifically, the scheme provides "[t]he governing body of any county which borders on or which contains part of a lake with not less than one hundred miles of shoreline, may establish a lake area business district" "[u]pon petition by fifty or more owners of real property located within five miles of the lake." Section 67.1170.1-.2. Once created, each district is "a political subdivision of the state" consisting of the area in that county within five miles of the lake shoreline. Section 67.1170.1.

Section 67.1175.1 requires each lake area business district to have an "advisory board" to act as the district's governing body. By statute, the advisory board "shall be a nonprofit entity" consisting of seven members—six elected members and one advisory member. Section 67.1175.1. Members of the advisory board are to be elected by the

---

[3] Because this Court concludes the entire statutory scheme must be struck, this Court need not reach Challengers' alternative points on appeal, including that the advisory board election procedures violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and that future advisory board elections must be conducted pursuant to chapter 115.

"county lodging association," which is statutorily defined as the businesses in the district ("lodging businesses"). *Id.*[4]

One of the advisory board's powers is the ability to propose a tax to the district residents to be "paid by the transient guests of hotels, motels and resorts situated within the district" ("lodging tax").[5] Section 67.1177.1. If passed, the lodging tax "shall be used by the advisory board for advertising and promotion of tourism." Section 67.1177.5. Since the statutory scheme's creation, lake area business districts and advisory boards were created, and lodging taxes passed, in Camden, Miller, and Morgan counties, and patrons of the lodging businesses in these three districts have paid the lodging tax. Once collected, the lodging tax is spent by the advisory boards in each district.[6] *Id.*

Griswold owned Shawnee Bluff Winery in Miller County, and Salamun owned Pointe View Management in Camden County. In 2020, Griswold and Salamun ran for a position on the advisory board in their respective business districts. Amid the election, Griswold and Salamun were notified of changes to the voting rules and procedures to

---

[4] Specifically, each lodging business in the district is entitled to vote for two advisory board members from "its designated category." Section 67.1175.1. There are three designated categories: hotels, motels, or resorts with (1) "fifty or less rooms," (2) "more than fifty rooms but less than three hundred rooms," and (3) "at least three hundred rooms." *Id.* The categories are important because the advisory "board members of each lodging category … have sole authority for the expenditure of funds collected from that category[.]" Section 67.1177.5.

[5] The tax can be 2 to 6 percent of sales or charges. Section 67.1177.1. The Camden and Miller county business districts passed a 3 percent lodging tax.

[6] The county collector retains 2 percent of the lodging tax collected by the lodging businesses and transfers the remaining lodging tax revenue to the advisory board. Section 67.1177.6.

allow property management companies to cast one vote for each property the company managed. Neither Griswold nor Salamun won her respective election.

Both Griswold and Salamun, along with their businesses, filed nearly identical suits against their respective county, business district, and various county officials (collectively "Respondents"). The cases were assigned to the same judge and proceeded simultaneously. Challengers sought a declaration that sections 67.1175 (creating the advisory board) and 67.1177 (defining the advisory board's powers) facially violate article VI, section 23 of the Missouri Constitution, which prohibits a political subdivision from granting public money to a private entity.

Following a bench trial, the circuit court declared section 67.1175.1 facially violates article VI, section 23 of the Missouri Constitution because it mandates the lake area business districts (political subdivisions) transfer tax funds (public money) to the advisory board (a private nonprofit entity). The circuit court, by striking the phrase "which shall be a nonprofit entity," modified section 67.1175.1.[7]

This appeal follows.[8]

## Standard of Review

The constitutional validity of a statute is reviewed *de novo*. *Byrd v. State*, 679 S.W.3d 492, 494 (Mo. banc 2023). "A statute is presumed valid and will not be held

---

[7] Pursuant to the circuit court's judgment, section 67.1175.1 would state, in relevant part: "In each lake area business district established pursuant to section 67.1170, there shall be created an advisory board, ~~which shall be a nonprofit entity,~~ to consist of seven members."

[8] This Court has exclusive appellate jurisdiction over these cases, which involve the validity of state statutes. Mo. Const. art. V, sec. 3.

5

unconstitutional unless it clearly contravenes a constitutional provision." *Id.* (internal quotations omitted). Challengers bear the burden of proving constitutional violations. *Id.*

## Analysis

### I. Sections 67.1175 and 67.1177 Are Constitutionally Invalid

Challengers argue the circuit court erred in modifying section 67.1175.1 because, despite the circuit court's modification, sections 67.1175 and 67.1177 continue to facially violate article VI, section 23 of the Missouri Constitution.[9] Challengers contend, notwithstanding the circuit court's severance of the phrase "which shall be a nonprofit entity" in section 67.1175.1, the advisory board continues to *operate* as a private nonprofit entity because the statutory scheme requires advisory board members be elected by private business entities—the lodging businesses.[10] Section 67.1175.1. Accordingly, Challengers aver the

---

[9] Article VI, section 23 of the Missouri Constitution provides that no political subdivision shall "grant public money or thing of value to or in aid of any corporation, association or individual …."

[10] Respondents argue, because Challengers contend the advisory board "operates" as a private entity, they are making an as-applied challenge, not a facial challenge. "[T]o mount a facial challenge to a statute, the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *Donaldson v. Mo. State Bd. of Registration for the Healing Arts*, 615 S.W.3d 57, 66 (Mo. banc 2020) (alteration in original) (internal quotations omitted). "It is not enough to show that, under some conceivable circumstances, the statute might operate unconstitutionally." *Id.* (internal quotations omitted). To the contrary, "[a]n as-applied challenge requires [Challengers] to show the statute was unconstitutionally applied to their individual circumstances." *Black River Motel, LLC v. Patriots Bank*, 669 S.W.3d 116, 123 (Mo. banc 2023). But Respondents' argument is misplaced, as Challengers do not challenge the statutory scheme as applied to their specific circumstances. Rather, Challengers argue, pursuant to the remaining statutory language, the advisory board operates, in any circumstance, as a private entity, even if no longer called a nonprofit entity. This is a facial challenge.

6

advisory board lacks public accountability such that it is a private entity controlling public money in violation of article VI, section 23 of the Missouri Constitution.

Challengers rely on *Ruggeri v. City of St. Louis*, 429 S.W.2d 765 (Mo. 1968), and *State ex rel. Board of Control of St. Louis School & Museum of Fine Arts v. City of St. Louis*, 115 S.W. 534 (Mo. 1908), for the proposition that the advisory board is a public entity only if its members are chosen by a public election or appointed by an elected official. In *Ruggeri*, the ordinance at issue imposed a 1 percent tax of daily gross receipts paid by patrons of all hotels, motels, and restaurants in St. Louis. *Ruggeri*, 429 S.W.2d at 766. The ordinance provided the tax revenue would be granted to and expended by an entity called the "Tourist Board." *Id.* The Tourist Board members included "[a]ny individual, firm or corporation interested in promoting education and the intellectual development

_____

Additionally, Respondents argue Challengers did not preserve their argument that the statutory scheme, as modified by the circuit court, is unconstitutional. At its core, however, Challengers' argument is that sections 67.1175 and 67.1177 are facially invalid. To preserve a constitutional argument for appeal, Challengers must:

> (1) raise the constitutional question at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review.

*Faatz v. Ashcroft*, 685 S.W.3d 388, 398 (Mo. banc 2024) (internal quotations omitted). Challengers challenged the facial validity of sections 67.1175 and 67.1177 in their amended petition, alleged these sections violate article VI, section 23 of the Missouri Constitution, explained the nature of the violation, and raised the issue throughout the proceedings below. Challengers properly preserved their constitutional challenge.

7

of the citizens of the City of St. Louis ….” *Id.* at 767. This Court concluded the Tourist Board was a private, nongovernmental body; though the Tourist Board may have been tasked with worthwhile, public purposes, the entity’s members were “neither elected nor appointed by public authority.” *Id.* at 768-69. This Court affirmed the circuit court’s judgment that the ordinance violated article VI, section 23. *Id.* at 770-71.

Similarly, in *Board of Control*, upon which *Ruggeri* relied, this Court considered whether a statute violated what is now article VI, section 23. *Bd. of Control*, 115 S.W. at 539. The Board of Control of St. Louis School and Medicine (the “board”), a division of Washington University, petitioned this Court for a writ of mandamus compelling the city of St. Louis to pay the board over $88,000 in tax revenue. *Id.* at 536, 540. Opposing the writ, the city argued the statute granting the board authority to spend the tax revenue violated the Missouri Constitution because it granted public tax revenue to a private entity—the board. *Id.* at 539. In concluding the board was a private entity, this Court noted merely because the board was authorized to spend public funds for public purposes did not transform the board into a public entity. *Id.* at 545. Instead, this Court emphasized the board members were not “public officers elected or appointed according to law,” and, therefore, the board was a private entity. *Id.* at 546.

*Ruggeri* and *Board of Control* make clear the advisory boards in this case can be public entities only if their members are elected or appointed by public authority. Thus, this Court must address whether the advisory board members are

8

elected or appointed by public authority. The statutory scheme provides the advisory board members are elected. Section 67.1175.1 ("Six members shall be elected by members of the county lodging association which shall be made up of all businesses that collect the lodging tax.") The question is whether the members are *publicly* elected.

Chapter 115 governs public elections. Although chapter 115 does not define "public election," section 115.137.1 provides: "any citizen who is entitled to register and vote shall be entitled to register for and vote pursuant to the provisions of this chapter in all statewide public elections and all public elections held for districts and political subdivisions within which he resides."[11] The statutory scheme plainly does not entitle all registered voters in a lake area business district (a political subdivision) to vote for the advisory board members—instead, only the lodging businesses may vote. Section 67.1175.1. As a result, the election was not "public."

Respondents contend, however, nothing prohibited the legislature from limiting the eligible voters in a "public" election to a certain category of people or

---

[11] Section 115.137.2 sets forth an exception: a public election may allow fewer than all the registered voters in a district to vote when "ownership of real property is required by law for voting." The statutory scheme at issue, however, does not require ownership of *real property* to vote for advisory board members; rather, it is the lodging businesses entitled to vote. Section 67.1175.1. Ownership of real property is not necessary to be a "lodging business." Indeed, neither Griswold nor Salamun nor their lodging businesses own the real property on which their lodging businesses are located.

entities—the lodging businesses.[12]  But section 115.005 provides:

"*Notwithstanding any other provision of law to the contrary*, the provisions of this chapter shall apply to *all public elections* in the state, except elections for which ownership of real property is required by law for voting."  (Emphasis added).

"[T]o say that a statute applies 'notwithstanding any other provision of the law' is to say that no other provisions of law can be held in conflict with it …." *Earth Island Inst. v. Union Elec. Co.*, 456 S.W.3d 27, 33-34 (Mo. banc 2015) (internal quotations omitted).[13]  Respondents' position would have this Court hold the election for the advisory board members, set forth in section 67.1175.1—allowing fewer than all registered voters in the political subdivisions to vote for advisory board members—is a public election.  To do so, however, would be to hold

---

[12] Respondents present this argument in response to Challengers' alternative argument that the advisory board elections must be conducted in accordance with chapter 115, including that the voter base be all registered voters.

[13] In *Earth Island*, this Court explained:

> When two already adopted statutes are at issue, this rule of construction applies. In such a case, if the later-adopted statute contains the "notwithstanding any other provision of law" language, it clearly indicates an intent for that later-adopted statute to prevail to the extent that the two statutes are inconsistent. If the earlier-adopted statute contains the "notwithstanding any other provision of law" language, the legislature's decision to leave that language in place rather than repealing it at the time of the adoption of the later, partially inconsistent statute also indicates an intent that the earlier statute is to continue to be given effect to the extent that the two are inconsistent.

*Earth Island*, 456 S.W.3d at 34.

10

section 67.1175.1 in conflict with section 115.137. In light of section 115.005's clear mandate that chapter 115 shall apply to all public elections notwithstanding any other provisions of law to the contrary, Respondents' position must fail.

Respondents also argue *Ruggeri* and *Board of Control* are distinguishable from the instant case because the entities at issue in those cases were not created by statute. Respondents contend, because the composition of the advisory board is prescribed by statute, the advisory board is a public entity. Respondents' position is untenable. As Challengers note, under Respondents' viewpoint, the legislature could create an entity of private citizens who serve lifetime appointments with the authority to impose a sales tax and spend the revenue and, because the entity was created by statute, it would be "public." This cannot be. Indeed, if this were so, the distinction between public and private entities would be one without a difference.

Finally, Respondents posit the advisory board is tasked with spending the tax revenue for public purposes; therefore, it is a public entity. *Ruggeri* and *Board of Control* addressed—and rejected—this exact argument. *Ruggeri*, 429 S.W.2d at 768-69 ("Irrespective of its worthwhile purposes and activities, and while its objects may be in a certain sense public, such [entity], as distinguished from uses or objects, is private."); *Bd. of Control*, 115 S.W. at 545. Merely because an entity is tasked with spending money for public purposes does not make the entity inherently public.

11

In sum, because the advisory board members are not publicly elected (nor appointed by public authority), the advisory board is a private entity. As Challengers assert, the circuit court erred in severing the phrase "which shall be a nonprofit entity" from section 67.1175.1. Section 67.1175, as modified, and section 67.1177, on their faces, require the lake area business districts (political subdivisions) to grant the lodging tax (public money) to the advisory board (a private entity) and, to that extent, violate article VI, section 23 of the Missouri Constitution.

## II. Severability

Having concluded sections 67.1175 and 67.1177 are constitutionally invalid, this Court must address whether the invalid sections can be severed from the remaining sections—67.1170 and 67.1180.

 "Section 1.140 governs the severability of substantively invalid statutory provisions." *Wilson v. City of St. Louis*, 662 S.W.3d 749, 758 (Mo. banc 2023). Section 1.140 provides:

> The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with legislative intent.

As an initial matter, Challengers contend the relevant severability inquiry is whether statutory sections can be severed from other statutory sections, not whether provisions

12

can be severed from one statute. Indeed, Challengers posit, because the statutory scheme includes four statutes regarding the same subject matter, such sections must be read together; therefore, the issue is whether, despite the unconstitutional *sections*—67.1175 and 67.1177—the constitutional *sections*—67.1170 and 67.1180—can be upheld.[14]

Sections 67.1170, 67.1175, 67.1177, and 67.1180 involve the same subject matter and were all enacted in House Bill No. 345 during the same legislative session in 1993. Therefore, "[t]he provisions of the entire legislative act must be considered together and all the provision must be harmonized if possible." *Baldwin v. Dir. of Revenue*, 38 S.W.3d 401, 405 (Mo. banc 2001) (internal quotations omitted).

The valid sections—section 67.1170 (creating) and section 67.1180 (dissolving) the lake area business districts—are so inseparably connected with and dependent upon the void sections that this Court cannot presume the legislature would have enacted the remaining sections without the void sections. Indeed, without the advisory board, there can be no lodging tax or an entity to spend the lodging tax. Section 67.1177.1 (allowing the advisory board to submit to the district residents, for majority vote, the lodging tax); section 67.1177.5. Without the lodging tax—to be used to promote tourism in the lake area business districts—there is no purpose for creating the lake area business districts and no need for a method to dissolve them. Because the remaining sections creating and dissolving the lake area business districts are inseparably connected with the void

[14] Respondents contend the circuit court conducted a severance analysis pursuant to section 1.140 and reached the correct result when it severed the phrase "which shall be a nonprofit entity." For the reasons explained above, Respondents' contention fails.

13

sections creating a governing body and its ability to impose and use the lodging tax, sections 67.1175 and 67.1177 cannot be severed.  The entire statutory scheme must be stricken.

## Conclusion

The judgment is reversed.  Pursuant to Rule 84.14, this Court enters the judgment the circuit court should have entered and declares sections 67.1170, 67.1175, 67.1177, and 67.1180 constitutionally invalid and void in their entireties.  As a result, this Court enjoins any further action by the county advisory boards and any further collection of lodging taxes pursuant to the unconstitutional statutory scheme.  The cases are remanded to the circuit court for appointment of trustees to wind up and dissolve the Camden County and Miller County lake area business districts.[15]

_____
Mary R. Russell, Chief Justice

All concur.

_____

[15] Though the entire statutory scheme must be stricken, to dissolve the lake area business districts, the circuit court should follow the legislature's intent expressed in the dissolution section, section 67.1180, as nearly as possible.